TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00424-CR







Henry Moore, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT


NO. 0980049, HONORABLE ROBERT A. PERKINS, JUDGE PRESIDING







 After the jury found appellant guilty of the offense of sexual assault, (1) the trial court
assessed punishment, enhanced by a prior felony conviction, at confinement for eleven years. 
Appellant asserts seven points of error, contending that error occurred in the trial court because: 
(1) and (2) the evidence was factually and legally insufficient to support the jury's findings that
physical force and violence were used; (3) and (4) the evidence was factually and legally
insufficient where it was not shown that the complainant made attempts to resist the minimal force
used; (5) the trial court gave an Allen charge that instructed the jury to listen to the majority when
the jury was deadlocked 6-6; (6) the trial court did not give defense counsel reasonable time to
examine the Allen charge; and (7) the trial court refused to allow defense counsel to question a
State's witness about a criminal charge pending against her. We will affirm.

 The indictment alleged in pertinent part that appellant caused his sexual organ to
penetrate the female sexual organ of J.J. by compelling J.J. to submit and participate "by the use
of physical force and violence." In light of appellant's challenge to both the legal and factual
sufficiency of the evidence, we will detail evidence favorable to both the State and appellant.

 J.J., a seventeen year old high school student, was waiting at a bus stop at Airport
Boulevard and Manor Road when appellant, age 26, and a friend drove by. Appellant turned his
vehicle and drove back to the bus stop, rolled down the window, and asked J.J. to come to the
car. Appellant asked J.J. her name and told her she was pretty. Appellant and J.J. exchanged
pager numbers. About a week later J.J. paged appellant. When appellant responded by calling
J.J., they talked before J.J. asked appellant to take her to the place where she worked in order that
she might get her pay check. Instead of going to pick up J.J.'s pay check, they ended up in front
of appellant's apartment. J.J. stated that she did not want to go to appellant's apartment, but when
appellant said he would be "in there for a while, I got out and went in."

 After entering the apartment, appellant told J.J. she could watch TV while he went
into another room. Five or ten minutes later, appellant returned completely naked. J.J. told
appellant, "I'm going to get my stuff out of the car and I'm leaving." Appellant replied, "No,
you're not going to leave." J.J. stated that she figured that she was not going to get to leave, but
with appellant's permission, she called her place of employment to report that she was sick. J.J. 
did not report that she was being held or that she was in any kind of trouble. Appellant pulled
J.J. "like a parent will pull a kid." Appellant dragged J.J. to the bedroom and "pushed me on
the bed." J.J. asked appellant to stop. "One arm was over my chest -- it didn't really hurt," but
J.J. stated it was stopping her from getting up. When J.J. was asking appellant to stop, J.J.
related that appellant told her "this is going to make me a real woman." In response to a question
about what appellant was doing with his other arm, J.J.'s non-responsive answer was "I'm
unbuttoning my blue jeans and, you know, unzipping them." J.J. said she was scared and crying. 
Appellant pulled her panties down and put his penis in her. Appellant refused J.J.'s request to
use a condom, stating that a real man does not use a condom.

 After J.J. heard the door unlock, J.J. stated a woman later identified as Kathleen
White, appellant's live-in girl friend, entered the room. White was very angry and appellant
jumped up and put his shorts on. J.J. asked appellant for the keys to his car so she could get her
inhaler because she was suffering from an asthma attack. Appellant told J.J. to go to his car and,
at J.J.'s request, appellant took her to a parking lot near Highland Mall where she walked to her
place of employment. J.J. called a friend, who, along with her friend's mother, took J.J. to her
home. Her friend's mother testified that after they were able to get J.J. calmed down, J.J.
reported that she had been raped. After J.J. told her mother what had happened, police were
called and charges were filed. J.J. testified that she had been going to a counselor at the Rape
Crisis Center ever since the assault.

 In reviewing the legal sufficiency of the evidence, we must determine whether,
viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. See Jackson v.
Virginia, 443 U.S. 307, 319 (1979). Under the Jackson standard, the reviewing court is not to
position itself as a thirteenth juror in assessing the evidence, nor is it the court's place to second
guess the determination made by the trier of fact. See Collins v. State, 800 S.W.2d 267, 269
(Tex. App.--Houston [14th Dist.] 1990, no pet.). The trier of fact (the jury in this cause) is in a
better place than an appellate court to weigh, accept, or reject all or any portion of any witness's
testimony. It is the duty of this Court to determine if the explicit and implicit findings by the trier
of fact are rational under legal standards to support the conviction. See Adelman v. State, 828
S.W.2d 418, 422 (Tex. Crim. App. 1992).

 On appellate review, we may consider factual sufficiency as well as legal
sufficiency. See Stone v. State, 823 S.W.2d 375 (Tex. App.--Austin 1992, pet. ref'd untimely
filed); see also Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996) (adopting Stone
test). In Stone, this Court set the following standard for factual review:


[T]he court reviews all the evidence without the prism of "in the light most
favorable to the prosecution." Because the court is not bound to view the evidence
in the light favorable to the prosecution, it may consider the testimony of defense
witnesses and the existence of alternative hypotheses. The court should set aside
the verdict only if it is so contrary to the overwhelming weight of the evidence as
to be clearly wrong and unjust.



Stone, 823 S.W.2d at 381 (citations omitted).

 Appellant points to the following evidence: that J.J. said she was not hurt, she
made no attempt to escape, an absence of evidence of physical threats or force, and a medical
examination that revealed no injury. Appellant urges that the evidence shows a mere offensive
touching that did not amount to physical force or violence. Appellant suggests that some degree
of resistance is required despite the provision in Texas Penal Code Ann. § 22.011(b)(1) (West
Supp. 1999) that the offense of sexual assault is without the consent of the other person if: "The
actor compels the other person to submit or participate by the use of physical force or violence." 
Contrary to appellant's contention, "[u]nder this statute, sexual assault victims are no longer
required to resist, as the emphasis is now upon the actor's compulsion rather than the victim's
resistance." See also Barnett v. State, 820 S.W.2d 240, 241 (Tex. App.--Corpus Christi 1991,
pet. ref'd); Wisdom v. State, 708 S.W.2d 840, 842-43 (Tex. Crim. App. 1986).

 Appellant correctly suggests that J.J. used very poor judgment in many respects. 
However bad her judgment may have been, this factor does not serve as a bar to any offense. J.J.
testified that appellant pulled her into the bedroom, pushed her onto the bed, and held her down
by placing his arm across her chest. A reasonable juror could have considered as a contributing
factor the difference in the ages of J.J. and appellant. While it is unclear at what time it occurred,
J.J. testified that she had an attack of asthma. J.J. cried and said, "No, stop" during the assault. 
Viewing the evidence in the light most favorable to the verdict, we hold that any rational trier of
fact could have found the essential elements of the offense beyond a reasonable doubt.

 Our analysis of appellant's factual challenge to the sufficiency of the evidence takes
into account the absence of threats, the lack of injury to the complainant, the failure of J.J. to call
for help, the testimony of appellant's then live-in girlfriend and the testimony of Tamara Bushner
that J.J. left appellant's apartment without appearing to be upset. After having considered the
foregoing as well as the remainder of the evidence and the existence of alternative hypotheses, we
conclude that the verdict was not so contrary to the overwhelming weight of the evidence to be
clearly wrong and unjust. Appellant's first and second points of error are overruled.

 In his third and fourth points of error, appellant contends that the evidence is
legally and factually insufficient to support the conviction for sexual assault where the indictment
alleges physical force and violence and the complainant does not make reasonable attempts to
resist the minimal force used.

 Our finding in points of error one and two that sexual assault victims are no longer
required to resist since the emphasis is on the compulsion rather than the resistance is dispositive
of appellant's contention. Assuming appellant is correct in his contention, we find that J.J.'s
resistance in the context of these facts satisfied the legal and factual sufficiency of the evidence. 
Appellant's third and fourth points of error are overruled.

 In his fifth point of error, appellant asserts that the trial court erred when it gave
an Allen (2)
 or "dynamite" charge that instructed the jurors to listen to the majority when the jury
was deadlocked 6-6. Appellant correctly states that this court should assess the impact of the
Allen charge in the light of the language in the context and under all the circumstances. See
Howard v. State, 941 S.W.2d 102, 123 (Tex. Crim. App. 1996).

 The jury retired to deliberate at approximately 1:30 p.m. At 6:13 p.m. the
foreperson notified the trial court in writing that they were deadlocked at 6-6. Pertinent to
appellant's complaint, the trial court's supplemental charge provided:

You should listen, with a disposition to be convinced, to the arguments of the other
jurors. If a larger number or jurors are for deciding the case one way, those in the
minority should consider whether they are basing their opinion on speculation or
surmise and not on the evidence in the case, keeping in mind the impression the
evidence has made on a majority of the jurors of equal honesty and intellect as the
minority.



(Emphasis added). The jury returned a verdict of guilty at 11:40 p.m.

 Appellant urges that the charge was not applicable because there was no majority
one way or the other when the charge was given. Consequently, appellant contends the charge
had a coercive effect. The court's supplemental charge specifically provided: "If a larger number
of jurors are for deciding the case one way . . . ." Clearly, the instruction allowed for the
possibility that no majority existed. 

 Appellant also asserts that the charge was coercive because of the lateness of the
hour that the jury deliberated and the lack of food for ten hours. Appellant points to testimony
of two jurors that the Allen charge caused them to give way to the majority and lessened the
State's burden of proof even though there was no majority at the time of the charge. Appellant
does not point to any portion of the charge that deviated from the traditional Allen charge that has
been used for over one hundred years. See Loving v. State, 947 S.W.2d 615, 620 (Tex.
App.--Austin 1997, no pet.). Another circumstance listed as coercive was that the jury went for
ten hours without eating. The jury had lunch shortly after 1:30 p.m. The bailiff testified at the
motion for new trial that he asked the jury on two occasions if they wanted anything to eat. The
jury declined and the bailiff stated that he told the jury to knock on the door if they wanted to eat. 
The bailiff reported that no request for dinner was ever made by the jury. After reviewing the
charge and all the surrounding circumstances, we perceive no error. Appellant's fifth point of
error is overruled.

 In his sixth point of error, appellant contends that the trial court erred when it did
not give defense counsel reasonable time to examine the Allen charge. "The failure of the court
to give the defendant or his counsel a reasonable time to examine the charge and specify the
ground of objection shall be subject to review either in the trial court or in the appellate court." 
Tex. Code Crim. Proc. Ann. art. 36.16 (West 1981).

 Out of the presence of the jury, the trial court advised counsel that it was going to
give an Allen charge since the jury had advised it was deadlocked. Defense counsel stated to the
court that she had an objection even though she had not seen the charge. After giving defense
counsel the charge, the court stated, "Ms. Denero, you got a chance to read this? What's your
objection?" Defense counsel objected under article 36 of the Code of Criminal Procedure that
governs jury charges and stated, "I've only been given it before the argument begins," and further
objected that the change was not based on any evidence and was prejudicial to the defendant.

 The record does not reflect how much time was allowed for defense counsel to
examine the Allen charge. Since the charge appears to be a standard Allen charge, it would not
appear that a substantial amount of time would be needed as required in examining the primary
charge. Assuming the court did not allow defense counsel reasonable time to examine the charge,
"the judgment shall not be reversed unless the error appearing from the record was calculated to
injure the rights of defendant, or unless it appears from the record that the defendant has not had
a fair and impartial trial." Tex. Code Crim. Proc. Ann. art. 36.19 (West 1981). Our disposition
of appellant's fifth point of error is dispositive of appellant's claims that his rights were injured
or that he was deprived of a fair and impartial trial. Appellant's sixth point of error is overruled.

 In his seventh point of error, appellant contends that the trial court erred in not
allowing defense counsel to question a State's witness about a criminal charge pending against her
to show bias or motive. Linda Wilson, whose daughter was a close friend of J.J., testified that
pursuant to a call from her daughter, she went to a location near Highland Mall to pick up J.J.
Wilson described J.J. as being shaky, scared and upset. After Wilson and her daughter were able
to get J.J. to calm down, J.J. told them that she had been raped.

 Out of the presence of the jury, the defense counsel established that Wilson had
been filed on for a misdemeanor assault against a man in 1995. Wilson stated that she had not
talked to anyone about what affect her testimony in this cause would have on the charge pending
against her. Defense counsel urged that the pending charge against Wilson showed her bias
against men and her vulnerable relationship with the State. Appellant urges that he was denied
the right to confront a crucial witness against him under the Sixth Amendment and Davis v.
Alaska, 415 U.S. 308 (1974). In Davis, the court held that the defendant might impeach a
prosecution witness who was on juvenile probation for burglary to show the bias of the witness
as a result of his vulnerable status as a probationer and his concern that he might be a suspect in
the burglary case on trial. Id. at 320.

 In the instant cause, no warrant had ever been executed. Wilson was not aware that
the charge was pending until she sought a protective order in a divorce case in 1997. 
Subsequently, the complaining witness in the 1995 case went with her to the county attorney's
office to ask that the charge be dismissed. It was not determined that a charge was still pending
against Wilson until the trial court suggested that a telephone call be made to determine if the case
was still pending in county court.

 The pivotal issue is whether a defendant is allowed to demonstrate any possible bias
or interest the witness may have to testify on the State's behalf. See Carroll v. State, 916 S.W.2d
494, 500 (Tex. Crim. App. 1996). Even though no agreement had been made with the State, the
witness's belief that her testimony would be to her later benefit would be sufficient basis to show
bias. Id. For evidence to be admissible, the proponent must establish some causal connection or
logical relationship between the pending charge and the witness's vulnerable relationship or
potential bias or prejudice for the State, or testimony at trial. See Carpenter v. State, 979 S.W.2d
633, 634 (Tex. Crim. App. 1998). The parameters of cross-examination for the showing of bias
rests in the sound discretion of the trial court. See Chambers v. State, 866 S.W.2d 9, 27 (Tex.
Crim. App. 1993). The trial court's determination is not reversible unless the appellant shows
a clear abuse of discretion.

 In the instant cause, no warrant had ever been executed. The complainant had gone
with the witness to the county attorney's office to ask that the complainant be dismissed. The
prosecuting attorney advised the trial court that he was unaware of any charges pending against
the witness. While not determinative, the witness testified that she had not been offered any deal 
 to testify. It was not determined that a charge was pending in the county court until the trial
court suggested a call be made to confirm it. Under these circumstances, we are unable to
conclude that the trial court abused it discretion in concluding that there was no causal connection
between the pending charge and a vulnerable relationship or bias for the State. We hold that the
trial court did not err in disallowing defense counsel to question the witness about the charge
pending against her in county court. Appellant's seventh point of error is overruled.

 The judgment is affirmed.



 

 Tom G. Davis, Justice

Before Justices Kidd, Patterson and Davis*

Affirmed

Filed: October 7, 1999

Do Not Publish
















* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. See Tex. Penal Code Ann. § 20.011(b)(1) (West Supp. 1999).
2. See Allen v. United States, 164 U.S. 492 (1896).




nship with the State. Appellant urges that he was denied
the right to confront a crucial witness against him under the Sixth Amendment and Davis v.
Alaska, 415 U.S. 308 (1974). In Davis, the court held that the defendant might impeach a
prosecution witness who was on juvenile probation for burglary to show the bias of the witness
as a result of his vulnerable status as a probationer and his concern that he might be a suspect in
the burglary case on trial. Id. at 320.

 In the instant cause, no warrant had ever been executed. Wilson was not aware that
the charge was pending until she sought a protective order in a divorce case in 1997. 
Subsequently, the complaining witness in the 1995 case went with her to the county attorney's
office to ask that the charge be dismissed. It was not determined that a charge was still pending
against Wilson until the trial court suggested that a telephone call be made to determine if the case
was still pending in county court.

 The pivotal issue is whether a defendant is allowed to demonstrate any possible bias
or interest the witness may have to testify on the State's behalf. See Carroll v. State, 916 S.W.2d
494, 500 (Tex. Crim. App. 1996). Even though no agreement had been made with the State, the
witness's belief that her testimony would be to her later benefit would be sufficient bas