Carl. Dean ADAMS, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–93–00224–CR.

Court of Appeals of Texas,
Tyler.

July 31, 1996.

Discretionary Review Refused
Nov. 27, 1996.

Joe E. Shumate, Henderson, for appellant.

John R. Smith, Center, for appellee.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

RAMEY, Chief Justice.

Carl Dean Adams was tried by a jury and convicted of indecency with a child. He was sentenced to five years in prison (probated for five years) and fined $5000.00. Adams raises three points of error on appeal. We will affirm the judgment of the trial court.

◼ In his first point of error, Adams alleges that the trial court erred in failing to grant his motion for new trial because there was not sufficient evidence to establish venue in Shelby County. The jury found that Adams fondled the breast of his twelve-year-old victim while giving her a ride in his airplane. He alleges that though he took off and landed in Shelby County, the girl's own description of the events placed the plane over Panola County at the time of the offense.

◼ Article 13.17 of the Code of Criminal Procedure provides the standard for the establishment of venue in a criminal case:

> In all cases mentioned in this Chapter, the indictment or information, or any pleading in the case, may allege that the offense was committed in the county where the prosecution is carried on. To sustain the allegation of venue, it shall only be necessary to prove by the preponderance of the evidence that by reason of the facts in the case, the county where such prosecution is carried on has venue.

TEX.CODE CRIM.PROC.ANN. art. 13.17 (Vernon 1994). The statute requires venue to be proven by a preponderance of the evidence rather than beyond a reasonable doubt because venue is not a criminative fact. *Fairfield v. State*, 610 S.W.2d 771, 779 (Tex.Cr. App. [Panel Op.] 1981); *see also, Rippee v. State*, 384 S.W.2d 717, 718 (Tex.Cr.App.1964). The evidence is sufficient to establish venue if "from [that] evidence the jury may reasonably conclude that the offense was committed in the county alleged." *Rippee*, 384 S.W.2d at 718; *Knabe v. State*, 836 S.W.2d 837, 839 (Tex.App.—Fort Worth 1992, pet. ref'd).

Adams argues that the victim's testimony indicates that the plane was over Panola County when the offense occurred. She stated that Adams touched her breast a few seconds after showing her the location of her parents' house from the air. The victim's father testified that the family lived on a fifteen acre tract that was partly in Shelby County and partly in Panola County. The house itself, however, was inside the Panola County line. The father admitted that if the plane had flown in a line from the airport to his house, it would have entered Panola County.

Adams himself provided testimony regarding the flight path of his plane on the day in question:

> State: Which way did you go [after take-off]?
>
> Adams: Took off to the North, turned left, went just North of Lake Pinkston, turned left again, flew maybe five or six or eight minutes, was up and down Highway 7, come back to the airport.
>
> State: About how long were you gone?

Adams: Maybe twenty minutes. Thirty at the most.

Perhaps the most damaging evidence to Adams' venue assertion is his own response regarding whether he flew over the victim's home on the day of the offense:

State: Now, [the victim] testified that you went over her home. Do you remember going over her home on that trip?

Adams: Not on that trip. We did on the previous one.

This statement directly contradicts Adams' claim on appeal that the victim's testimony proves that the plane was in Panola County, over the victim's house, when the offense occurred.

Based on this testimony as to the airplane's flight path, we hold that the evidence was sufficient for the jury to conclude that the offense occurred in Shelby County. Adams' first point of error is overruled.

■ In his second point of error, Adams asserts that the trial court erred in admitting the hearsay testimony of the victim's sister under the "outcry" exception to the hearsay rule. He argues that the testimony, which involved a statement made to the sister by the victim immediately after the incident, did not meet the requirements for admissibility as an exception to the hearsay rule under Article 38.072 of the TEXAS CODE OF CRIMINAL PROCEDURE. A statement describing an alleged sex offense made by a victim who is twelve years old or younger is not inadmissible as hearsay if it is brought in through the testimony of the first person over the age of eighteen to whom the victim made the statement and if certain procedural requirements are met, including notice to the defendant of the prosecution's intention to use the statement in trial and the provision of a summary of that statement. TEX.CODE CRIM.PROC. art. 38.072 (Vernon Supp.1996).

The victim's sister, who was fifteen or sixteen years old at the time of the incident, testified that the victim told her that Adams had "touched" her while they were in the airplane. She claimed that the victim cried as she related the incident and that it was clear from her demeanor and expressions that the "touching" had been more than inno-

cent. The victim made the statement to her sister only minutes after exiting the airplane.

The State maintains that Article 38.072 does not apply in this case. The article provides that such statements are not inadmissible because of the hearsay rule if the person to whom the statement was made was eighteen or over. Therefore, for the trial court's decision to be free from error, the statement complained of here must fall under a different exception to the hearsay rule.

■ The common law provides for the admission of certain hearsay statements made by children after they have been the victims of sex offenses. Hearsay statements made by a crime victim or witness to a crime may be admissible as excited utterances under Rule 803(2) of the TEXAS RULES OF CRIMINAL EVIDENCE if certain requirements are met. *See Lawton v. State,* 913 S.W.2d 542, 553 (Tex.Cr.App.1995); *McFarland v. State,* 845 S.W.2d 824, 846 (Tex.Cr.App.1992), *cert. denied,* 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993). The period of time elapsed since the commission of the offense and whether the statement was spontaneous or made in response to questioning are factors to be considered in determining the admissibility of the statement, but they will not by themselves render a statement inadmissible. *McFarland,* 845 S.W.2d at 846. The critical factor is whether the victim "was still dominated by the emotions, excitement, fear, or pain of the event." *Id.* It has long been held that such spontaneous utterances by children made shortly after a sex offense are admissible as part of the *res gestae* of the offense. *Fretwell v. State,* 442 S.W.2d 393, 395 (Tex.Cr.App.1969); *Arvay v. State,* 646 S.W.2d 320, 321 (Tex.App.—Dallas 1983, pet. ref'd). The admissibility of such statements is within the trial court's discretion. *Lawton,* 913 S.W.2d at 553.

In *Lawton,* the Court of Criminal Appeals held that a statement made by an eyewitness to a murder one hour after the offense and in response to police questioning was nevertheless admissible as an excited utterance because the testimony of the investigating officer revealed that the witness was "still 'excited and upset' by the events leading up

to the victim's death." *Lawton,* 913 S.W.2d at 553. The court of appeals in *Arvay* held similarly. There, the child victim told his father of the sex offense committed upon him less than an hour after it occurred and while still experiencing the trauma of the event. The court determined that the statement was part of the *res gestae* of the offense because it was made spontaneously and "under the immediate influence of an exciting event." *Arvay,* 646 S.W.2d at 321. In *Fretwell,* the Court of Criminal Appeals held that a statement made by the victim soon after the offense was admissible as part of the *res gestae* even though it included a reference to a beating she received from the defendant one day earlier. *Fretwell,* 442 S.W.2d at 395.

Here, according to the testimony of the victim's sister, the victim made the statement in question spontaneously and within five minutes of landing from the short airplane flight. We note that the victim had no opportunity to speak to another person until she exited the plane and therefore made the statement only five minutes after leaving Adams' zone of control. The sister testified that when the victim walked away from the plane, she was crying and visibly upset by the event and asked the sister to follow her to the family's car so she could relate what had happened. We hold that the statement was admissible as an excited utterance under Rule 803(2) and overrule Adams' second point of error.

■ In his third and final point of error, Adams contends that the trial court violated Rule 404 of the TEXAS RULES OF CRIMINAL EVIDENCE when it allowed the State to introduce evidence of prior wrongdoing. During cross-examination of Adams, and over his counsel's objections, the court allowed the State to question him regarding an investigation by the Federal Aviation Administration:

> State: Mr. Adams, have you ever been sanctioned by the FAA, the Federal Aviation Administration, for making false entries in aircraft or pilot logs?
>
> Adams: I've been accused of it, yes. It cost me $15,000 to go prove I didn't do it. Does that answer your question?
>
> State: I think it does.

Adams argues that the admission of the testimony violated Rule 404 in that it was used to attack his character and because the State did not provide notice of its intent to use the evidence in trial as required by Rule 404:

> It may, however, be admissible for other purposes, ... provided, upon timely request by the accused, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence....

TEX.R.CRIM.EVID. 404(b).

The State did not make this information part of its case-in-chief but brought it up on cross-examination of Adams. The State argues that Adams opened the door to testimony regarding the FAA's investigation because Adams' counsel questioned him on direct examination to establish his expertise in the use, maintenance, and significance of aircraft logbooks and because his counsel made the following references to that expertise in his opening statement:

> He'll tell you a little about logbooks, and I assure you he knows a good deal more about logbooks and has much more experience in connection with logbooks and aircraft and flying and instructing than anybody else that you'll hear about today....

The State maintains that it did not intend to use the information in trial and did not use it to prove any aspect of Adams' character but asked him about it during cross-examination to refute his claims of expertise.

■ We agree. A defendant who testifies as a witness during the trial of his case may be cross-examined in the same manner as any other witness and may therefore be "contradicted, impeached, discredited, [and] attacked...." *Cisneros v. State,* 692 S.W.2d 78, 83 (Tex.Cr.App.1985). By offering testimony and argument before the jury regarding his expertise in the maintenance of logbooks, Adams opened the door to the State's rebuttal with evidence of the FAA investigation into his actual maintenance of his logbooks, regardless of the fact that such evidence encompassed the allegation of an extraneous offense or bad act. *Yohey v. State,* 801 S.W.2d 232, 236 (Tex.App.—San Antonio 1990, pet. ref'd); *Gilbert v. State,*

874 S.W.2d 290, 297 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd); *House v. State*, 909 S.W.2d 214, 216 (Tex.App.—Houston [14th Dist.] 1995, pet. granted).

Furthermore, even if the trial court's admission of the evidence of the investigation had been error, no harm to Adams would have resulted because Adams' reply made it clear that he was exonerated, and the State did not attempt to leave the jury with a different impression. *See Harris v. State*, 790 S.W.2d 568, 588 (Tex.Cr.App. 1989). For such hypothetical error to require reversal, it would have to "be of such a magnitude that it disrupted the jurors' orderly evaluation of the evidence, no matter how overwhelming [that evidence] might have been." *Id.* There is no evidence of such disruption here.

We hold that the trial court properly allowed the State to cross-examine Adams regarding the FAA investigation. Consequently, we overrule Adams' third point of error and **affirm** the judgment of the trial court.