**Michael Jerome EDWARDS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 14–01–01143–CR, 14–01–01144–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 9, 2003.

Joseph Salhab, Houston, for appellant.

Lori Deangelo Fix, Houston, for appellee.

Panel consists of Justices YATES, ANDERSON, and FROST.

## MAJORITY OPINION

JOHN S. ANDERSON, Justice.

Following a jury trial, appellant was convicted of two crimes: improper sexual activity with a person in custody and sexual assault. In this consolidated appeal, appellant asserts ten points of error. We affirm.

### PROCEDURAL BACKGROUND

In two separate causes, appellant was indicted for (1) the state jail felony offense of improper sexual activity with a person in custody; and (2) sexual assault. *See* TEX. PEN.CODE ANN. §§ 39.04(a)(2)[1] and 22.011(a)(1)(B)[2] (Vernon 2002 and 1994). After a jury trial, appellant was found guilty of both offenses.

Judgment and sentence were rendered on October 5, 2001. Appellant was sentenced to two years' confinement in the Texas Department of Criminal Justice (TDCJ) State Jail Division for the offense of improper sexual activity with a person in custody, and to ten years' confinement in the TDCJ Institutional Division for the sexual assault offense.

Appellant filed notices of appeal on October 5, 2001 and a motion for new trial on November 1, 2001. Appellant's motion for new trial was overruled by operation of law.

### FACTUAL BACKGROUND

The complainant was arrested in Corpus Christi, Texas, on an open warrant for

---

1. On the date of the offense, Penal Code § 39.04(a) provided that "[a]n official or employee of a correctional facility or a peace officer commits an offense if he intentionally: (2) engages in sexual contact, sexual intercourse, or deviate sexual intercourse with an individual in custody." In 2001, the 77th Legislature rewrote the initial paragraph to read: "An official of a correctional facility, an employee of a correctional facility, a person other than an employee who works for compensation at a correctional facility, a volunteer at a correctional facility, or a peace officer commits an offense if...."

2. Penal Code § 22.011(a) provides that "[a] person commits an offense if the person: (1) intentionally or knowingly: (B) causes the penetration of the mouth of another person by the sexual organ of the actor, without that person's consent."

theft charges filed against her in Harris County. After being in custody for fifteen days in Corpus Christi, she was transported to Houston in a van operated by Trans-Cor America. It was during this transport to Houston that the offenses for which appellant was convicted took place.

Although Houston is located only five hours from Corpus Christi, complainant's transport to Harris County took six days, involved more than eighteen stops, and resulted in her spending more than 114 hours in TransCor's control. Although TransCor policy mandates that female ex-tradition agents accompany all female prisoners, none was assigned to complainant's van during her transport from Corpus Christi to Houston.

Initially there was a misunderstanding by TransCor drivers that complainant's warrant emanated out of Harrison County instead of Harris County. This resulted in complainant's spending 18 to 20 hours on the road the first day of her transport; first she was driven south to Texas' Valley area, then north to Belton, Texas. In Belton, complainant was left until a second transport vehicle could come to get her.

Although her trip from Corpus Christi to Belton was exhausting and uncomfortable, complainant raises no complaint against the first two TransCor drivers who transported her. She testified they behaved properly and were "nice people." When the next TransCor van came to pick up her up in Belton, however, it was operated by David Jackson and Michael Edwards, the appellant. It was during this portion of the trip that complainant testified she was sexually assaulted.

The TransCor van in which complainant was transported was divided into three areas. Female prisoners were confined in the middle section located behind the drivers' seats. A mesh screen separated them from the drivers; they were fed through two 8″ × 8″ "portholes" located in the screen.

All prisoners wore handcuffs and shackles around their ankles at all times except when using the restroom or overnighting at a correctional facility. Chains went from the prisoners' ankles to their handcuffs and around their waist, leaving just enough room to eat and drink. Complainant testified she could take only "baby steps" and could scratch her head only when she lowered it into her lap. One witness testified prisoners could lift their hands only "six inches from their stomachs, if that much."

The incident for which appellant was tried and convicted was for the rape of complainant on October 19, 1999. The sexual assault occurred in the TransCor van on Interstate 10 while Jackson was driving. According to complainant's and Jackson's testimony, shortly before arriving at the Harris County Jail in Houston, appellant got behind the driver's seat, reached through the food porthole into the female prisoners' compartment, pulled complainant by her chains and hair to the porthole, and forced her to perform oral sex on him. Appellant ejaculated into complainant's mouth and on her shirt.

At trial, the State's evidence included the testimony of complainant, Jackson, and two other prisoners who traveled with complainant and appellant during the five-day trip from Belton.[3]

According to testimony admitted at trial, several factors contributed to complainant's fear of appellant and her state of

3. The only other passenger in the van during the incident—a Costa Rican native—was deported and did not testify at trial. A sworn affidavit of his testimony was admitted by defense counsel as a bill of exception.

mind during the assault: appellant insisted prisoners call him "boss man" throughout the trip; he did not allow talking among the prisoners; he used sexually explicit terms and fondled the female prisoners; and he terrorized complainant by forcing her to raise her shirt and bra to expose herself to other passengers and appellant. Appellant also reached into the female prisoners' compartment and penetrated complainant's vagina with his fingers, a flashlight, and handgun; he kept a shotgun on a rack above the female prisoners' heads; he conducted "screen tests" for entertainment, whereby he would slam on the van's brakes, forcing prisoners to hit their faces against the wire screens; and he intimidated and humiliated the women prisoners by illuminating their faces and exposed breasts at night with flashlights.

On one occasion, appellant and Jackson pulled their van over to the side of the road and told the prisoners they were going to undo their chains, force them to run, and shoot them for attempting to escape. On another occasion, appellant slid a bar of soap under a bathroom door and told complainant to "clean herself up for him." Appellant and Jackson also threatened everyone in the van with a gun and said that if anyone said anything, they would "take care of them"—which the prisoners interpreted to mean "kill them." Testimony indicates appellant and Jackson also threatened to use mace on the prisoners.

The witnesses testified that appellant and Jackson crossed the border into Mexico, got drunk, and visited prostitutes during the trip; they had beer, alcohol, and marijuana; and appellant told complainant he planned to visit a strip club in Houston and wanted her to "prepare" him sexually for the visit. Appellant also warned complainant that he "knew" people at the Harris County Jail who would treat her well if she was a "good girl" and cooperated with his demands.

Soon after the sexual assault, complainant arrived at the Harris County Jail and disclosed her attack to authorities. Evidence indicated she had a split lip. In addition, it was discovered that two pieces of evidence complainant had secreted away during the trip—a business card of Jackson's and a list of names of fellow prisoners who might serve as witnesses—were missing from her bag of personal belongings. Authorities found them in a trash can near the inmate processing area; the only persons with access to these items who could have thrown them away were appellant and Jackson.

Subsequent to appellant's arrest, complainant identified appellant in a line-up; investigators found semen stains on complainant's shirt that tested positive for complainant's and appellant's DNA; blood stains were found on her underwear; and samples of fluid taken from the floor of the van from behind the driver's seat tested positive for semen and appellant's DNA.

## ISSUES ON APPEAL

In appellant's first and second points of error—common to both appeals—appellant asserts (1) the evidence is insufficient to prove by a preponderance of the evidence that appellant's offense took place in Harris County, Texas; and (2) the trial court improperly denied appellant's objection to the State's argument that appellant's counsel was attempting to confuse the jury with the issue of venue.

In cause number 14–01–00143–CR—pertaining to appellant's conviction for improper sexual activity with a person in custody—appellant asserts the evidence is legally and factually insufficient to support a finding appellant was an employee of the Harris County Jail at the time of the offense.

In cause number 14–01–01144–CR—pertaining to appellant's conviction for sexual assault—appellant asserts the evidence was legally and factually insufficient to prove (1) appellant used physical force or violence against the complainant; and (2) appellant threatened to use physical force or violence against the complainant.

## I. POINTS OF ERROR COMMON TO BOTH APPEALS

### A. VENUE

In his first point of error, appellant contends there was insufficient evidence to establish the offenses took place in Harris County, Texas.

### 1. Standard of Review

■ As a general rule, venue is proper in the county where an alleged sexual offense takes place. TEX.CRIM. PROC.CODE ANN. §§ 13.14 and 13.17 (Vernon 1977). The burden of proof is on the State to establish proper venue by a preponderance of the evidence. TEX.CRIM. PROC.CODE ANN. § 13.17 (Vernon 1977); *Black v. State*, 645 S.W.2d 789, 790 (Tex.Crim.App.1983); *Peterson v. State*, 659 S.W.2d 59, 61 (Tex. App.-Houston [14th Dist.] 1983, no pet.). Failure to prove venue in the county of prosecution is reversible error. *See Black*, 645 S.W.2d at 791. However, it is presumed that venue is proven in the trial court unless the record affirmatively shows otherwise or venue is made an issue at trial. *See* TEX.R.APP. P. 44.2(c)(1).

■ The trier of fact may make reasonable inferences from the evidence to decide the issue of venue. *Bordman v. State*, 56 S.W.3d 63, 70 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd). Evidence is sufficient to establish venue if "from the evidence the jury may reasonably conclude that the offense was committed in the county alleged." *Rippee v. State*, 384 S.W.2d 717, 718 (Tex.Crim.App.1964).

### 2. Discussion

■ Venue was properly made an issue at trial because appellant first raised the issue of venue in a pretrial motion. TEX. R.APP. P. ANN. 44.2(c)(1). He continued to make venue an issue during trial by asserting that complainant did not know where she was during most of the time she was being transported and that complainant's identification of two intersecting highways in Harris County was insufficient to prove the assault took place in Harris County. We disagree.

### (a) The State's evidence supports a reasonable inference the offenses took place in Harris County.

■ The evidence at trial shows that appellant's offenses did in fact occur in Harris County. The driver of the van testified the vehicle was around Highway 6 and Interstate 10 in Harris County, and that he saw a sign for "Addicks/6" at the time of the assault. An investigator with the Harris County District Attorney's Office testified Interstate 10 and Highway 6 intersect in Harris County more than ten miles from the county line and that it is a 30–minute trip by car from Highway 6 to Harris County Jail. The investigator further testified that the only signs that exist for an Addicks/6 exit are located on Interstate 10 within the county line.

In addition, complainant herself testified (1) the assault occurred as appellant's van was traveling down Interstate 10 from Columbus to Houston; (2) she saw a sign for Highway 6 as soon as the assault was completed; (3) the van was at the intersection of Interstate 10 and Highway 6 within one minute of the attack; and (4) the van arrived at the Harris County Jail within 10 to 15 minutes of the assault.

**(b) Appellant points to no evidence the offenses took place anywhere but in Harris County.**

Although appellant makes the conclusory statement that the evidence is insufficient to support a finding that appellant's offenses occurred in Harris County, he points to nothing in the record to support an alternate theory. Indeed, defense counsel hinted during trial that the van came into Houston on Highway 59 rather than Highway 10—thus placing the offense in Waller County rather than Harris—but no evidence supports this theory. Defense counsel suggested that a GPS tracking system traced appellant's path into Houston and that it supported a route different from the one described by complainant, but no GPS tracking data was admitted into the record. Finally, defense counsel elicited testimony from one of the State's witnesses that complainant's trip into Houston took longer than it should have taken following the path described by complainant, but such evidence only shows a gap in time—it does not necessarily indicate an alternate route was taken.

**(c) Specific points of reference and passages of time can establish venue.**

█ Where venue is sought to be established by someone in a moving vehicle, specific points of reference and measurable passages of time can establish the offense occurred in the State's proffered county. *See Adams v. State,* 936 S.W.2d 313, 315 (Tex.App.-Tyler 1996, pet. ref'd) (finding sufficient evidence for proper venue from plane's flight path where plane took off and landed in county of suit and sexual assault victim's point of reference lay partly in that county); *Sixta v. State,* 875 S.W.2d 17, 18 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd) (finding sufficient evidence for judicial notice of proper venue where policeman testified offense took place in front of two landmarks located within county of suit); *Lozano v. State,* 958 S.W.2d 925, 929 (Tex.App.-El Paso 1997, no pet.) (finding sufficient evidence for proper venue where victim testified molestation took place in an automobile "very near" his home and his house was in the county of suit); and *Jasso v. State,* 699 S.W.2d 658, 661 (Tex.App.-San Antonio 1985, no pet.) (finding sufficient evidence for proper venue where victim testified she was driven to sexual assault site within an hour of leaving a mall and a second witness testified it took at least an hour to drive from the mall to the county line).

Based on complainant's testimony that the assault took place approximately 10–15 minutes before arriving at the Harris County Jail and because she saw a sign located in Harris County immediately after her attack, we find the State established proper venue by a preponderance of the evidence. Accordingly, we overrule point of error number one.

**B. DENIAL OF APPELLANT'S OBJECTION TO STATE'S CLOSING ARGUMENT**

In his second point of error, appellant contends the trial court committed reversible error in overruling his objection to the State's argument that defense counsel attempted to confuse the jury with the issue of venue. He claims such argument was inflammatory and improper.

**1. Standard of Review**

█ When reviewing alleged error in a jury argument, the appellate court must analyze the statement in light of the entire argument and not on isolated instances. *Drew v. State,* 743 S.W.2d 207, 220 (Tex. Crim.App.1987). In order to constitute reversible error, the argument must be extreme or manifestly improper, violative of a mandatory statute, or inject new facts harmful to the accused into the trial pro-

ceedings. *McKay v. State*, 707 S.W.2d 23, 38 (Tex.Crim.App.1985). Counsel is to be given wide latitude in drawing inferences from the record, as long as the inferences are reasonable and offered in good faith. *Coble v. State*, 871 S.W.2d 192, 205 (Tex. Crim.App.1993).

## 2. Discussion

■ During closing remarks to the jury during the guilt-innocence phase of appellant's trial, defense counsel argued that the State failed to prove by a preponderance of the evidence that the alleged offenses took place in Harris County. The State responded as follows:

> STATE: And let me ask you this question. If Mr. Edwards is innocent of both of these offenses, why does it even matter that whether or not (sic) it happened in Harris County? Why is it they're arguing so much about getting it out of Harris County, Texas, saying that the State cannot prove this to you? If he's innocent, he's innocent. Why is it they want to go on this thing? Because the evidence is there to show that he isn't innocent. They're taking every swipe at this case that they can to either confuse you or mislead you or try to get you to do anything to look away from this evidence. And that's what this whole issue about jurisdiction is all about.
>
> DEFENSE COUNSEL: We would object, Your Honor, to that line of—as improper argument because we don't

have a burden of proof to prove anything.

> COURT: The jury instructions tell the jury that. Overruled.

■ Appellant argues the State's closing remarks were improper and that he has a statutory right to be tried in the county where the offenses allegedly took place. TEX.CRIM. PROC.CODE ANN. § 13.17 (Vernon 1977); *Black v. State*, 645 S.W.2d 789, 790 (Tex.Crim.App.1983). The State responds by asserting appellant's objection on appeal is waived because it differs from the one raised at trial.[4] We agree.

■ An objection stating one legal basis may not be used to support a different legal theory on appeal. *Rezac v. State*, 782 S.W.2d 869, 870 (Tex.Crim.App.1990). This is so because trial judges must have the opportunity to rule on legal theories and the State must have the opportunity to remove objections or supply other testimony. *Purtell v. State*, 761 S.W.2d 360, 365–6 (Tex.Crim.App.1988).

In this case, appellant's objection at trial was that the State's argument placed the burden of proof on the defense. On appeal, appellant argues it is improper for the State to assert appellant was confusing or misleading the jury. Because appellant's objection at trial does not comport with his complaint on appeal, nothing is presented for appellate review. *See Rezac*, 782 S.W.2d at 871.

Accordingly, we overrule appellant's second point of error.

---

4. The State also argues appellant's counsel did not timely object. *See* TEX.R.APP. P. 33.1(a)(1); *Smith v. State*, 842 S.W.2d 401, 406 (Tex.App.-Fort Worth 1992, pet. ref'd) (finding when prosecutor made two identical statements, objection to second statement was untimely when defendant did not object to first). This court, however, does not agree defense counsel's objection was untimely. Because defense counsel raised his objection at the first mention of the words "confuse" and "mislead" in conjunction with the issue of "jurisdiction," we will construe appellant's objection as timely.

The State also asserts that (1) the State's remarks were proper; and (2) even if the remarks were improper, they resulted in harmless error. Appellant waived the objection, so we do not reach these issues.

## II. POINTS OF ERROR PERTINENT TO CAUSE NUMBER 14-01-01143 ONLY: APPELLANT'S STATUS AS AN EMPLOYEE OF HARRIS COUNTY

In cause number 14-01-01143—pertaining to appellant's conviction for improper sexual activity with a person in custody—appellant asserts in his third and fourth points of error that the evidence was legally and factually insufficient to support a jury finding that he was an employee of the Harris County Jail at the time of the offense.

### A. Standard of Review

We apply different standards when reviewing the evidence for legal and factual sufficiency. To determine legal sufficiency, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Garrett v. State, 851 S.W.2d 853, 857 (Tex.Crim.App.1993). This standard of review applies to cases involving both direct and circumstantial evidence. King v. State, 895 S.W.2d 701, 703 (Tex.Crim. App.1995). On appeal, this court is not to reevaluate the weight and credibility of the evidence; we consider only whether the jury reached a rational decision. See Muniz v. State, 851 S.W.2d 238, 246 (Tex. Crim.App.1993). The jury, as the trier of fact, is the sole judge of the credibility of the witnesses. See Soto v. State, 864 S.W.2d 687, 691 (Tex.App.-Houston [14th Dist.] 1993, pet. ref'd).

To determine factual sufficiency, we view the evidence in a neutral light and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Johnson v. State, 23 S.W.3d 1, 7 (Tex.Crim.App.2000). We must review the evidence weighed by the jury tending to prove the existence of the elemental fact in dispute, and compare it to the evidence tending to disprove that fact. Id. The appellate court may find either that the State's proof of guilt was so obviously weak as to undermine confidence in the jury's determination, or that the finding of guilt was against the great weight and preponderance of the evidence. Id. at 11. When the defendant proffers contrary evidence, we consider whether the proof of guilt, although adequate if taken alone, is greatly outweighed by defendant's proffered evidence. Id. We may disagree with the jury's decision, even if probative evidence exists that supports the verdict. Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim.App.1996). However, a factual sufficiency review must be appropriately deferential to avoid substituting our judgment for the fact finder's. Id. at 648. We are not free to reweigh the evidence, but must exercise our jurisdiction only to prevent a manifestly unjust result. Id.

### B. Discussion

Appellant asserts the evidence was legally and factually insufficient for the jury to find he was an employee of the Harris County Jail. He argues he was an employee of TransCor America—a private transport agency over which the Jail had no control—and so was not employed by the Harris County Jail. We disagree.

At the time appellant's offense of improper sexual activity with a person in custody occurred, the offense was deemed to have occurred when an official of a correctional facility, an employee of a correctional facility, or a peace officer engaged in sexual contact, sexual intercourse, or deviate sexual intercourse with

a person in custody. TEX. PEN.CODE ANN. § 39.04(a)(2) (Vernon 2002).[5]

The penal code does not define the term "employee." However, the Texas Court of Criminal Appeals has expressly held the term "employee" includes "agent" and "servant." *See Ackley v. State*, 592 S.W.2d 606, 608 (Tex.Crim.App.1980) (finding that, where the Alcoholic Beverage Code failed to define "employee," the term should be construed to include an "agent" of a retail beer licensee). *See also Heberling v. State*, 834 S.W.2d 350, 355 (Tex.Crim.App. 1992) (finding police informant acted as an agent of law enforcement when he accepted and delivered cocaine on behalf of a Houston police officer). Indeed, an "agent is the employee of his principal" and the relationship between a principal and his agent constitutes a form of employment. *Ackley*, 592 S.W.2d at 608.

■■■■ An agent is someone who is authorized by another to transact business or manage some affair for him and to render to him an accounting of such transaction. *Id.* The term "agency" denotes a consensual relation existing between two persons, by virtue of which one of them is to act for and on behalf of the other, being subject to the other's control. *Id. See also Alvarado v. State*, 853 S.W.2d 17, 23 (Tex. Crim.App.1993) (finding Mexican police were not acting as agents of U.S. law enforcement officials when they obtained a confession from defendant since they acted independently on their own behalf).

■■■■ The test, therefore, for whether appellant was an "employee" of the Harris County Jail is whether he was subject to the Jail's control. *Ackley*, 592 S.W.2d at 608. In the instant case, there is no dispute that the Harris County Jail meets the definition of "correctional facility" as defined in the Texas Penal Code.[6] Additionally, there is sufficient evidence to support a finding that appellant was "an employee, namely, a transportation agent" of Harris County Jail by virtue of its control over appellant. Specifically, evidence shows:

- Appellant's employer was under contract with the Harris County Jail;
- The Harris County Jail controlled the booking process appellant and Jackson followed;
- The Harris County Jail controlled who Jackson and appellant transported and where they took them;
- TransCor drivers were taught the rules and regulations required by federal and local police agencies; and
- Jackson considered himself to be a "designated transportation agent" for the Harris County Jail; he acknowledged he and appellant acted for the Harris County Jail when they transported the complainant; and he admitted that neither he nor appellant had authority to change orders without first seeking permission from Trans-Cor, who was under contract with Harris County.

Because appellant and Jackson were required to follow prescribed booking procedures—an "accounting" of sorts—when

---

**5.** In 2001, the 77th Legislature rewrote the initial paragraph of this statute. *See supra* note 1.

**6.** "Correctional facility" is defined in the Penal Code as a place designated by law for the confinement of a person arrested for, charged with, or convicted of a criminal offense. TEX. PEN.CODE ANN. § 1.07(a)(14) (Vernon 1994). The term includes: (A) a municipal or county

jail; (B) a confinement facility operated by the Texas Department of Criminal Justice; (C) a confinement facility operated under contract with any division of the Texas Department of Criminal Justice; and (D) a community corrections facility operated by a community supervision and corrections department. TEX. PEN.CODE ANN. § 1.07(a)(14)(A)-(D) (Vernon 1994).

they dropped off prisoners; were required to wear uniforms that mirrored those worn by Harris County police officers; were acting in lieu of Harris County police deputies when they transported prisoners; and lacked authority to change orders without first seeking permission from an external source, we find the evidence supports a conclusion that appellant was controlled by, and authorized "to act for and on behalf of," the Harris County Jail. As such, a rational jury could reasonably have found appellant to be an "employee, namely a transportation agent" of the Jail within the meaning of Texas Penal Code § 39.04(a). Thus, we find the evidence legally sufficient to support the verdict.

Because appellant did not testify or put on witnesses to the contrary, the test for factual sufficiency is whether the evidence establishing appellant as an employee of Harris County Jail is so weak as to undermine confidence in the jury's determination. *Johnson,* 23 S.W.3d at 11. Applying this standard, we find the weight of the evidence supports the verdict. Thus, we also find the evidence to be factually sufficient.

Accordingly, appellant's third and fourth points of error related to his conviction for improper sexual contact with a person in custody are overruled.

## III. POINTS OF ERROR PERTINENT TO CAUSE NUMBER 14–01–01144 ONLY: APPELLANT'S *USE* AND *THREATENED USE* OF FORCE

In cause number 14–01–01144—pertaining to appellant's sexual assault convic-

tion—appellant asserts in his third, fourth, fifth, and sixth points of error that the evidence was legally and factually insufficient to support the jury's findings because no reasonable trier of fact could have found he *used*—or *threatened to use*—physical force or violence against the complainant. We disagree.

### A. Standard of Review

We apply the same legal and factual sufficiency standards of review as detailed above in Section II. A.

### B. Discussion

 The complainant testified that appellant did not make any "express threat of physical force or violence" upon her; thus, argues appellant, he exercised only "generalized intimidation," not an "overt use of physical force or violence" or an "express threat." [7] We find this argument to be unpersuasive.

A person commits the offense of sexual assault if the person intentionally and knowingly causes the penetration of the mouth of another person by the sexual organ of the actor, without that person's consent. TEX. PEN.CODE ANN. § 22.011(a)(1)(B) (Vernon 2002). Two situations that constitute lack of consent are:

(1) the actor compels the other person to submit or participate by the use of physical force or violence; [and]

(2) the actor compels the other person to submit or participate by threatening to use force or violence against

---

**7.** Appellant also contends it was physically impossible for him to have exercised physical force or violence over the complainant because the TransCor van was "simply too cramped." However, a defendant's ability to actually commit the alleged offense is not an element of either § 39.04(a)(2) or § 22.001— nor is it enumerated as a defense to the crimes—so impossibility is not relevant to appellant's sufficiency challenge. Thus, we decline to address it.

Additionally, if appellant is seeking now to raise impossibility as a defense to the charged offenses, it is too late. The issue was not submitted to the jury, nor was it brought forward on appeal; thus, it has been waived.

the other person, and the other person believes that the actor has the present ability to execute the threat.

*See* TEX. PEN.CODE ANN. §§ 22.011(b)(1) and (2) (Vernon 2002).

Both situations were alleged in appellant's indictment and the trial court submitted both to the jury. The jury returned a general verdict of guilty.

▇▇▇ The verdict in every criminal action must be general. TEX.CRIM. PROC. CODE ANN. § 37.07(1)(a) (Vernon 1981). An indictment may contain as many separate paragraphs charging the same offense as necessary to allege the various manner and means of having committed one alleged offense and to meet the contingencies of the evidence. *Graham v. State*, 19 S.W.3d 851, 853 (Tex.Crim.App.2000). When such methods of committing the offense are alleged conjunctively, proof of any one of the ways charged in the indictment will support a conviction. *Sidney v. State*, 560 S.W.2d 679, 681 (Tex.Crim.App. 1978). Here, we find the State conclusively proved appellant's *threatened* use of force.

▇▇▇ Explicit verbal threats and physical injury are not necessary to prove a defendant compelled a victim's participation. *See Barnett v. State*, 820 S.W.2d 240, 241–42 (Tex.App.-Corpus Christi 1991, pet. ref'd). *See also Garcia v. State*, 750 S.W.2d 922, 923 (Tex.App.-Corpus Christi 1988, no pet.)(finding use of physical force and violence where victim did not resist but appellant had previously secured passive compliance by choking her); *Graves v. State*, 994 S.W.2d 238, 244 (Tex.App.-Corpus Christi 1999, pet ref'd) (finding appellant's demands carried an implicit threat that if victim did not submit, she would be beaten as she had been previously); *Smith v. State*, 719 S.W.2d 402, 403 (Tex.App.-Houston [1st Dist.] 1986, no pet.) (finding

evidence of physical force and violence where victim passively accepted sexual intercourse because she had been forced to submit to sexual demands by being beaten most of her life).

Inherent in the concept of force, whether it be physical force, threats, or some other type of coercion, is that, when a person involuntarily faces distasteful options, it is very human to select that which is the least distasteful. *Brown v. State*, 576 S.W.2d 820, 823 (Tex.Crim.App.1978); *Smith*, 719 S.W.2d at 403.

Here, the State offered evidence showing (1) appellant inserted a gun in complainant's vagina against her wishes; (2) appellant and Jackson pulled to the side of a road and threatened to shoot complainant and the other prisoners in a "mock escape"; (3) appellant and Jackson kept a shotgun stored above complainant's head; (4) appellant and Jackson inflicted injury on complainant through a series of "screen tests"; (5) appellant and Jackson brandished a weapon and told complainant and other prisoners that "if they told," they would be "taken care of"; (6) appellant and his partner threatened to have people at the jails they visited "take care" of the prisoners if they said anything; (7) appellant and his partner threatened to use mace on the prisoners; (8) complainant's cries of "no" and "stop" had been futile in warding off previous assaults; (9) appellant pulled complainant's hair and chains immediately prior to making his demands; and (10) complainant thought that if she cooperated, she would survive to tell her story to authorities.

For a rational jury to find complainant suffered a "threat of force or violence" under such circumstances seems reasonable. Indeed, appellant's demands carried an implicit threat that if complainant did not submit, she would in fact be harmed in some way. *See Graves*, 994 S.W.2d at 244.

We therefore find legally sufficient evidence for a jury to find appellant used threats of physical force or violence to obtain complainant's consent to his sexual demands. To hold otherwise "would be to require sexual assault victims who had previously been beaten for refusing the sexual advances of their attacker to again be physically forced to submit to the whims of the sexual predator or, at the very least, compel them to make an express threat of force before such person could be held accountable for their actions." *Id.* As the *Graves* court pointed out, "[t]his indeed would be a travesty." *Id.*

Because appellant did not testify or put on witnesses to the contrary, the test for factual sufficiency is whether the evidence establishing the element of appellant's use of threats of force or violence to compel complainant to submit to the penetration is so weak as to undermine confidence in the jury's determination. *Johnson,* 23 S.W.3d at 11. Applying this standard, we find the evidence to be factually sufficient to support the finding appellant used threats of force to compel the complainant to submit. Accordingly, we overrule appellant's fifth and sixth points of error related to appellant's sexual assault conviction.

Because we need only find evidence to support one situation constituting lack of consent to meet the requirements of Penal Code § 22.011(a)(1)(B), this Court need not address appellant's points of error three and four related to his conviction for sexual assault.

We affirm the trial court's judgments in cause numbers 862,982 and 827,178 below.

FROST, J., concurs.

KEM THOMPSON FROST, Justice, concurring.

The majority is correct in concluding that the Harris County Jail exercised sufficient control over appellant to make him the Jail's employee under section 39.04 of the Penal Code, based on the holding in *Ackley v. State* that "an agent is the employee of his principal." 592 S.W.2d 606, 608 (Tex.Crim.App.1980). *Ackley,* however, is somewhat at odds with the general principles of agency law upon which it relies. *Ackley* suggests that all agents are employees. *See id.* But Texas law has long recognized that not every agent is an employee; an agent may be an independent contractor. *See Baptist Mem'l Hosp. Sys. v. Sampson,* 969 S.W.2d 945, 947 (Tex.1998); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(2) (Vernon Supp. 2002) (defining "employee" of a governmental unit to include certain agents, but not those who are independent contractors or who perform tasks the details of which the governmental unit does not have the right to control); RESTATEMENT (SECOND) OF AGENCY § 220, cmts. e, g (1958) (stating that "it is important to distinguish between a servant and an agent who is not a servant, since ordinarily a principal is not liable for the incidental physical acts of negligence in the performance of duties committed by an agent who is not a servant" and that in statutes the term "employee" has largely replaced the term "servant").

An agent is a person who is authorized by a principal to transact business or manage some affair on behalf of the principal. *Grace Cmty. Church v. Gonzales,* 853 S.W.2d 678, 680 (Tex.App.-Houston [14th Dist.] 1993, no writ). As this court held in *Robles v. Consolidated Graphics, Inc.,* "agent" and "independent contractor" are not mutually exclusive categories. 965 S.W.2d 552, 558 (Tex.App.-Houston [14th Dist.] 1997, pet. denied). Rather, "a party 'who contracts to act on behalf of another and [is] subject to the other's control except with respect to his physical conduct is

an agent and also an independent contractor.'" *Id.* (quoting RESTATEMENT (SECOND) OF AGENCY § 14N (1958)). The extent of control the principal exerts over an agent determines whether the agent is an employee or an independent contractor.

The test to determine whether an agent is an employee instead of an independent contractor is "whether the employer has the right to control the progress, details, and methods of operations of the work." *Limestone Prods. Distribution, Inc. v. McNamara,* 71 S.W.3d 308, 312 (Tex. 2002). In an employment relationship, the employer controls not only the end to be accomplished, "but also the means and details of its accomplishment." *Id.* According to the Texas Supreme Court, the right to control is measured by considering several factors:

(1) the independent nature of the worker's business;

(2) the worker's obligation to furnish necessary tools, supplies, and materials to perform the job;

(3) the worker's right to control the progress of the work except about final results;

(4) the time for which the worker is employed; and

(5) the method of payment, whether by unit of time or by the job.

*Id.*

The evidence upon which the majority relies is legally and factually sufficient to support a finding that appellant was an agent of the Harris County Jail; and, because *Ackley* equates agents with employees, this evidence is sufficient to support a finding that appellant was an employee of the Harris County Jail. *See Ackley,* 592 S.W.2d at 608. Application of the Texas Supreme Court's test in *Limestone Products,* however, might yield a different result. *See Limestone Prods. Distribution,*

*Inc.,* 71 S.W.3d at 312. Nevertheless, because the holding of the Court of Criminal Appeals in *Ackley* is binding precedent in this criminal case, this court is correct to follow it. Under *Ackley,* this court must overrule appellant's third and fourth points. Accordingly, I concur in the court's judgment.