In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00013-CR


______________________________




JOHNNY R. ROGERS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the County Court at Law


Harrison County, Texas


Trial Court No. 2006-1260




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 A jury found Johnny R. Rogers guilty of driving while intoxicated (DWI). See Tex. Penal
Code Ann. § 49.04 (Vernon 2003). The jury assessed Rogers' punishment at 180 days in the county
jail, but further recommended the trial court suspend imposition of that sentence. The trial court
entered a judgment in accordance with the jury's verdict and released Rogers to community
supervision for a period of two years. Rogers now appeals, raising a single appellate issue: that the
trial court erred by permitting the State to cross-examine him about his failure to bring additional
witnesses to corroborate his trial testimony. We overrule this issue and affirm the trial court's
judgment.

 At trial, the following exchange occurred during the State's cross-examination of Rogers:

[By Rogers:] That night I had gone to visit a friend earlier in the evening, in
the night. And I had spent time there. I was feeling okay. I did -- I had my
medication in the car that would help me reduce my [blood] sugar. I had had
something to eat at home. I felt normal and I was trying to lift her up, and so we
went out, and it was on the weekend, and I felt okay.


Q: Okay.


A: I didn't feel like --


Q: And nobody but you is here to testify about that. You didn't ask her to
come to substantiate and corroborate all that stuff? It makes for a greet [sic] story.


A: I didn't know that I needed to, sir.


Q: Didn't know that you needed to. Today is your trial, your day in Court,
your lawyer told you that the State is trying to convict you of DWI, that you broke the
law, and you didn't find it important to gather every piece of evidence in your favor.


 [Defense counsel:] Your Honor, we're going to object to this line of
questioning. It is an attempt on behalf of the State of Texas to put the burden on the
defense to prove something when the defense does not have to prove a thing. The
burden is on them.


 [State's counsel:] Your Honor, when --


 THE COURT: Overruled.


Q: You didn't find it important to do that, did you?


 [Defense counsel:] Asked and answered, Your Honor.


 THE COURT: Overruled.


Q: You can answer the question.


A: I left that to the judgment of my counsel. 


 [State's counsel:] Pass the witness, Mr. Rodgers.


It is this passage that Rogers now contends amounts to an attempt by the State to shift the burden of
proof from having the State show Rogers' guilt to have the accused prove his own innocence. 

 Rogers' appellate issue is more properly viewed as a challenge to the admissibility of his own
testimonial response to the State's question. See Caron v. State, 162 S.W.3d 614, 617 (Tex.
App.--Houston [14th Dist.] 2005, no pet.) (describing as "unfounded" appellant's assertion that
State's cross-examination questions served to shift burden of proof and reviewing issue for error in
admitting evidence). We review a trial court's decision to admit or exclude evidence for abuse of
discretion. Green v. State, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996); Montgomery v. State,
810 S.W.2d 372, 379-80 (Tex. Crim. App. 1990); Bradshaw v. State, 244 S.W.3d 490, 499 (Tex.
App.--Texarkana 2007, pet. denied). We will not reverse a trial court's ruling regarding the
admissibility of evidence unless that decision falls outside the wide zone of reasonable disagreement. 
Green, 934 S.W.2d at 102; Montgomery, 810 S.W.2d at 391; Bradshaw, 244 S.W.3d at 499.

 "The Texas Rules of Evidence generally favor the admissibility of all relevant evidence at
trial." Bradshaw, 244 S.W.3d at 499. The issue of corroboration, which is always at issue any time
any person testifies, goes to that witness' credibility. The credibility of testimonial witnesses,
whether they be for the State or for the defense, may be challenged by any party. Tex. R. Evid. 607;
see also Tex. R. Evid. 611(b). This ability to attack a testimonial witness' credibility necessarily
includes the ability to attack the defendant's credibility, should he or she testify. Id.; Tex. R. Evid.
611(b); Adams v. State, 936 S.W.2d 313, 317 (Tex. App.--Tyler 1996, pet. ref'd); see also Huffman
v. State, 12 S.W. 588, 589 (Tex. Crim. App. 1889) (defendant subject to precisely same challenges
to testimonial credibility as any other witness). 

 We read the State's cross-examination questions about the lack of corroborating evidence as
an attack on Rogers' credibility, not as an attempt to shift the burden of proof at trial. Rogers himself
admits in his appellate brief that his own credibility was "absolutely critical" to his defense. 
Accordingly, the State's cross-examination questions of Rogers amounted to a permissible attack on
the defendant's testimonial credibility. We thus conclude the trial court did not abuse its discretion
by permitting such questioning over trial counsel's objections. (1)

 We overrule Rogers' sole point of error and affirm the trial court's judgment.



 Jack Carter

 Justice


Date Submitted: August 27, 2008

Date Decided: August 28, 2008


Do Not Publish


1. To the extent that Rogers also attempts to claim on appeal that the State's cross-examination
questions amounted to an attack on his attorney-client relationship with defense counsel, Rogers did
not preserve such a claim for appellate review by first raising an objection at trial. See Tex. R. App.
P. 33.1 (a)(1)(A); Hardy v. State, 187 S.W.3d 232, 235 (Tex. App.--Texarkana 2006, pet. ref'd).


cretion." Nino v. State, 223 S.W.3d 749, 752 (Tex. App.--Houston
[14th Dist.] 2007, no pet.); see Garcia v. State, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990). "'[A]
trial court has broad discretion in determining' the proper outcry witness." Villanueva v. State, 209
S.W.3d 239, 247 (Tex. App.--Waco 2006, no pet.) (quoting Garcia, 792 S.W.2d at 92).

 However, although a trial court has broad discretion in determining the person who can be
an outcry witness, that discretion is not unfettered. The statute, which prescribes a narrow exception
to the hearsay rule, defines the identity of the outcry witness as being the "first person . . . to whom
the child made a statement about the offense." Tex. Code Crim. Proc. Ann. art. 38.072. There is
no exception to allow the second person to whom the child speaks about such an incident, whether
or not that second person can elicit more details than the first. 

 Plainly, Ricky testified that V.J. had told him "who" did this thing (the Defendant), "where"
it occurred (in the living room of the child's paternal grandparent), and "what" occurred (she was
forced to perform fellatio). In a journalistic sense, the only remaining question ("when") remained
unanswered throughout the trial. Although many more details were elicited through the skilled
questioning of the trained interviewer than by the child's father, those details were not related to the
"first person" prescribed by the statute to qualify as the outcry witness.

 Accordingly, there was error in having permitted the hearsay testimony of Dykes, the forensic
interviewer.

 D. Harm Analysis

 We do not reverse a ruling based on nonconstitutional error that does not affect "substantial
rights." See Tex. R. App. P. 44.2(b). If, after examining the record as a whole, we determine that
any error had slight or no effect on the jury, then we will not overturn the trial court's ruling. 
Morales v. State, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000) (quoting Johnson v. State, 967 S.W.2d
410, 417 (Tex. Crim. App. 1998)). An error affects a substantial right when the error has a
substantial and injurious effect or influence on the jury's verdict. King v. State, 953 S.W.2d 266, 271
(Tex. Crim. App. 1997); Russell v. State, 113 S.W.3d 530, 549 (Tex. App.--Fort Worth 2003, pet.
ref'd). The "presence of overwhelming evidence of guilt plays a determinative role" in this analysis. 
Motilla v. State, 78 S.W.3d 352, 356 (Tex. Crim. App. 2002) (quoting Harris v. State, 790 S.W.2d
568, 587 (Tex. Crim. App. 1989)). If we have "a grave doubt" that the result was free from the
substantial influence of the error, then we must reverse. Burnett v. State, 88 S.W.3d 633, 637 (Tex.
Crim. App. 2002). The court has explained that "grave doubt" means that "in the judge's mind, the
matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the
error." Id. at 637-38 (citing O'Neal v. McAninch, 513 U.S. 432, 433-36 (1995)). Thus, "in cases
of grave doubt as to harmlessness the petitioner must win." Burnett, 88 S.W.3d at 638.

 In essence, the fact that Dykes was not the proper outcry witness (whereby she would fall into
the category of witnesses permitted to testify under the outcry-witness exception to the hearsay rule),
her testimony became inadmissible as hearsay. Therefore, in this case, we will completely disregard
her entire testimony to determine what other evidence there was to urge the jury to vote for a
conviction.

 First, we have the testimony of Ricky, V.J.'s father, which is set out above. While his outcry
testimony was neither as detailed nor as extensive as that of the forensic interviewer, the basic facts
of the assault are set out.

 Second, there was the testimony of Shane Jackson, the licensed counselor to whom V.J. was
taken for treatment of her psychological condition after the assault was discovered. There was no
general hearsay objection to the testimony of this witness, which was admissible. See Tex. R. Evid.
803(4). The testimony of Jackson tracked much of that given by the forensic interviewer and
provided about as much detail. Consequently, almost the same information contained in the
testimony of Dykes, the putative outcry witness, was repeated in Jackson's testimony.

 Third, there was the testimony of V.J. herself. Although her testimony was uncertain in many
respects and although her testimony contradicted some of the things which Jackson had said (as
might be expected with an eight year old on the witness stand), she was definitely clear in her
testimony that her grandfather, the Defendant, had compelled her to take his penis into her mouth.

 Consequently, even if one totally disregards any testimony given by Dykes, overwhelming
evidence of guilt remains. 

 However, we examine not only the other evidence presented, we also review the entire record
of the trial. In doing so, we consider the nature of the evidence supporting the verdict, the character
of the error, and how the erroneously-admitted evidence might have been considered in connection
with other evidence in the case. Motilla, 78 S.W.3d at 357-58. We take into account the source and
the nature of the error, the extent of emphasis placed upon it by the State, its probable collateral
implications, the weight a juror would probably place on the error, and whether declaring it harmless
would be likely to encourage the State to repeat the same mistake with impunity. Harris v. State,
790 S.W.2d 568, 587 (Tex. Crim. App. 1989); Fischer v. State, 235 S.W.3d 470, 475 (Tex.
App.--San Antonio 2007, no pet.).

 For the most part, the testimony proffered by Dykes was redundant of other testimony,
particularly the testimony of Jackson, the child's counselor. The reference made by the State to
Dykes's testimony on closing argument was slight. (3) On the other hand, the Defendant's closing
argument relied quite a bit on this testimony, pointing out that V.J. began the interview with Dykes
by making four separate denials of the Defendant's conduct four times before finally relating that
Petrie had compelled her to put his penis in her mouth. It would appear that on closing argument,
then, the Defendant used Dykes's testimony more effectively to buttress his case than the State used
it to convict him. In short, Dykes's testimony was not so compelling, so unique, or so persuasive that
it played a significant role in the trial. The State, which offered it, placed little emphasis on its
importance during argument. Accordingly, its influence on the jurors was relatively minimal, given
the weight of the entire case, and it is highly unlikely that the jurors unduly relied upon it in voting
for a conviction.

 Under this analysis, we entertain no grave doubts that the result at which the jury arrived was
free from the substantial influence of the error.

 This being the case, we find that the error of allowing Dykes to testify as the outcry witness
was harmless. This point of error is rejected.

II. CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL

 The Defendant next claims that he was provided ineffective assistance of counsel, thereby
depriving him of his constitutional right to the same. 

 The standard of testing claims of ineffective assistance of counsel is set out in Strickland v.
Washington, 466 U.S. 668 (1984). To prevail on this claim, an appellant must prove by a
preponderance of the evidence (1) that his counsel's representation fell below an objective standard
of reasonableness and (2) that the deficient performance prejudiced the defense. Id. at 689; Rosales
v. State, 4 S.W.3d 228, 231 (Tex. Crim. App. 1999). To meet this burden, the appellant must prove
that the attorney's representation fell below the standard of prevailing professional norms and that
there is a reasonable probability that, but for the attorney's deficiency, the result of the trial would
have been different. Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Under this
standard, a claimant must prove that counsel's representation so undermined the proper functioning
of the adversarial process that the trial cannot be relied on as having produced a just result. 
Strickland, 466 U.S. at 686. 

 The Defendant cites several examples which took place during trial which, he alleges, when
taken in the cumulative, prove that he did not receive effective counsel. These examples are: 

 (1) Some witnesses (Ricky, the forensic interviewer, the licensed professional
counselor, and V.J.'s mother) all testified to one degree or another that they believed
V.J. to be telling the truth in her allegations against the Defendant but Defendant's
counsel made no objection; 


 (2) That when a drawing made by V.J. during her counseling session portrayed
the Defendant in jail being deprived of television rights, the right to communicate
with anyone, etc., was presented, the only objection lodged by the Defendant's
counsel to its introduction was that no proof had been adduced for it to fall within the
business records exception when a proper objection would have been to object to its
introduction as being unduly prejudicial to the Defendant; and


 (3) Defendant's counsel either did not object to the testimony of Defendant's wife
and daughter that Defendant had been prone to violence toward his wife and his now-deceased son in times past or, when he lodged objections which were sustained, he
failed to request that the jury be instructed to disregard that evidence.


 Texas appellate courts begin any such analysis by presuming that the appellant's trial counsel
performed competently. Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). We also
presume that counsel's decisions were reasonably professional and were motivated by sound trial
strategy. Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). In the absence of direct
evidence of counsel's reasons for the challenged conduct, an appellate court will assume a strategic
motivation for the conduct if any can be imagined. Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim.
App. 2001); Mallett v. State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). We will not conclude that
the challenged conduct constitutes deficient performance unless the conduct was so outrageous that
no competent attorney would have engaged in it. Garcia, 57 S.W.3d at 440. The best kind of record
for this kind of review is one produced on a hearing on a motion for new trial or a hearing on an
application for writ of habeas corpus. Smith v. State, 968 S.W.2d 490, 494 (Tex. App.--Texarkana
1998, no pet.). That strategy was not involved here.

 The Defendant has failed to establish that he suffered the ineffective assistance of counsel.

 We affirm the judgment of the trial court.



 Bailey C. Moseley

 Justice


Date Submitted: July 15, 2008

Date Decided: August 6, 2008


Do Not Publish

1. See Tex. Penal Code Ann. § 22.021 (Vernon Supp. 2008).
2. See Tex. Code Crim. Proc. Ann. art. 38.072 (Vernon 2005).
3. The sole mention by the State of Dykes's testimony was, "You heard her say it to her father,
you heard her say it four days later to the CAC interviewer, a forensic interviewer."