Johnny Leon BARNETT, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–91–459–CR.

Court of Appeals of Texas,
Corpus Christi.

Dec. 5, 1991.

Rehearing Overruled Dec. 30, 1991.

Gene N. Parrish, Dickinson, for appellant.

Michael J. Guarino, Denise V. Wilkerson, Galveston, for appellee.

Before NYE, C.J., and SEERDEN and BISSETT[1], JJ.

## OPINION

NYE, Chief Justice.

Appellant was convicted by a jury of sexual assault. (Tex. Penal Code Ann. § 22.011 (Vernon 1989). Due to an enhancement provision, the trial court assessed punishment at twenty-five years in prison, plus restitution for court costs and for his court appointed attorney's fees. By one point of error, appellant complains of insufficient evidence to support his conviction, claiming that the record does not show that the act was done without the victim's consent. We affirm the judgment of the trial court.

In reviewing sufficiency of the evidence claims, we view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979); *Houston v. State*, 663 S.W.2d 455 (Tex.Crim.App. 1984) (en banc); *Bannach v. State*, 704 S.W.2d 331, 333 (Tex.App.—Corpus Christi 1983, no pet.).

Appellant, who is a double amputee with two wooden legs, had been out drinking with a friend on the night of the charged incident. His friend, Dale Cheek, the complaining witness's uncle, invited appellant

---

**1.** Assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1989).

to stay with him and his family that night. Members of Dale's household include his mother, Essie Smothers, and Dale's seventeen-year-old-nephew, Troy Cheek, the complainant. Troy was described as being a small young man, physically weak, and the evidence showed that he has a diminished mental capacity. Although he is not retarded, Troy's I.Q. (74) is very close to the level recognized as retarded (69–70). At the time of this offense, he functioned at the level of an eight-year-old. According to the record, his diminished mental capacity possibly resulted from physical abuse suffered as a child. Nevertheless, Troy testified that on the night in question, appellant came into his room, and, on pretext of being cold, asked if he could get in bed with him. Troy did not deny appellant permission, and so appellant disrobed, removed his legs, and climbed into the bed. Troy testified that appellant asked him if he had ever had any sexual experience, and Troy answered no. With that, appellant began to rub Troy's chest and penis, and then appellant climbed on top of him, straddled him, and forced his penis into Troy's mouth. Troy further testified that appellant's hands were on his head, and appellant was "pulling on [Troy's] head" in order to "jack him[self] off." While this was going on, Troy stated, "I started to get up, but he [appellant] kind of, not shoved it but kind of put my head back down." The complainant testified on cross-examination that appellant did not "force" him down but he "pushed" his head down. Troy also stated that he was afraid of appellant, but that he could have gotten out of bed when appellant began to fondle him. He also said that his uncle probably would have come to help him if he had called for help, but that he did not cry out because he was scared to death and because the force of the penis in his mouth gagged him.

Ms. Smothers had gotten up during the night and discovered appellant with Troy when she heard "a peculiar noise" coming from Troy's room. She testified that, upon entering the room, she saw "bodies on the bed and under covers." She asked appellant to leave, which he did after gathering his belongings. She testified that she found Troy "wringing wet with sweat, ice cold, and shaking."

The State was required to prove that appellant "did intentionally or knowingly cause penetration of the mouth of Troy Cheek by inserting the penis of [appellant] into the mouth of Troy Cheek without ... consent by compelling Troy Cheek to submit or participate by the use of physical force or violence, and that Troy Cheek was not the spouse of [appellant]." Appellant claims that there is insufficient evidence to convict under this charge because the State failed to show a lack of consent by means of a knowing or intentional use of physical force or violence. Appellant bases his "consent" argument upon the fact that Troy offered virtually no resistance, there were no overt threats, and complainant suffered no injury or bruises.

 Sexual assault is without consent if the actor compels the other person to submit or participate by the use of physical force or violence. *Hernandez v. State,* 804 S.W.2d 168, 169 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd); Texas Penal Code Ann. § 22.011(b)(1) (Vernon 1989). Under this statute, sexual assault victims are no longer required to resist, as the emphasis is now upon the actor's compulsion rather than the victim's resistance. *Wisdom v. State,* 708 S.W.2d 840, 842–43 (Tex.Crim. App.1986); *Bannach,* 704 S.W.2d at 332–33. The issue before us, then, is whether sufficient evidence exists to show that appellant compelled Troy's submission by the use of *actual force. Garcia v. State,* 750 S.W.2d 922 (Tex.App.—Corpus Christi 1988, no pet.). From our review of the record, we find sufficient evidence to satisfy this issue. Troy's testimony that appellant straddled his chest, moved Troy's head apparently in a thrusting motion, and pushed Troy's head back down when he attempted to get up, is sufficient to indicate force. Troy further stated, "[H]e didn't force me down; but he pushed my head back on the pillow. And I tried to get up and he forced it down."

██ Although Troy's testimony was somewhat inconsistent on the use of the

word "force," his therapist testified that young people who have suffered abuse as children (as Troy had), often equate the word "force" only with physical beatings. The jury heard this evidence, and they were able to evaluate it in light of Troy's testimony and his demeanor at trial. The victim's diminished mental capacity, along with all of the other evidence, could be considered by the jury in determining the sufficiency of the evidence upon the issue of physical force and consent. *Bannach*, 704 S.W.2d at 333 (consent is to be determined from the totality of the circumstances); *see generally Wootton v. State*, 799 S.W.2d 499 (Tex.App.—Corpus Christi 1990, pet. ref'd) (expert testimony that retarded individuals are generally trusting and cooperative, and that complainants were incapable of appraising nature of sexual act and resisting it, supported conviction of sexual assault of retarded adults who functioned at the level of six-year-old children). Moreover, inconsistencies in testimony are resolved in favor of the verdict. *Goudeau v. State*, 788 S.W.2d 431, 434 (Tex.App.—Houston [1st Dist.] 1990, no pet.). In *Hernandez*, the evidence was held to be sufficient to show "physical force or violence" when the complainant resisted by attempting to pull away from her assailant but he forcibly restrained her. *Hernandez*, 804 S.W.2d at 169–70. The evidence supported a jury finding of submission compelled by force or violence in *Bannach* in which the victim testified that she faked acquiescence and did exactly what her attacker ordered because she feared for her life and wanted to avoid getting hurt. *Bannach*, 704 S.W.2d at 333. Neither of these cases required overt threats or beatings to show "physical force or violence."

We find that, in viewing the evidence in the light most favorable to the jury verdict, any rational trier of fact could have found beyond a reasonable doubt that Troy's submission and participation were compelled by appellant's use of actual force and violence. Appellant's sole point of error is overruled.

The judgment of the trial court is AFFIRMED.