Opinion filed July 8, 2010

 

 

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-09-00118-CR 

                                                    __________

 

                       KRISTOPHER
JOHN CAMNETAR, Appellant

 

                                                             V.

 

                                      STATE
OF TEXAS, Appellee



 

                                   On
Appeal from the 42nd District Court

                                                            Taylor
County, Texas

                                                    Trial
Court Cause No. 22992A

 



 

                                            M
E M O R A N D U M   O P I N I O N

            The
jury convicted Kristopher John Camnetar of sexual assault.  The trial court
assessed punishment at thirty-five years confinement.  In a single appellate
issue, appellant challenges the factual sufficiency of the evidence to support
his conviction.  We affirm.

Background

            The
indictment alleged that appellant sexually assaulted RKS,[1]
“by causing his male sexual organ to penetrate the mouth of [RKS], without the
said [RKS’s] consent and the said [appellant] compelled the said [RKS] to
submit and participate by the use of physical force and violence.”  At trial,
RKS testified that appellant had forced her to perform oral sex on him without
her consent.  During opening statements, appellant’s counsel acknowledged that
RKS had performed oral sex on appellant.  Appellant’s counsel claimed that RKS
had agreed to perform oral sex on appellant for a fee of $20.  In his appellate
issue, appellant argues that the evidence was factually insufficient to show
that he used physical force or violence as alleged in the indictment.

Standard
of Review

            To
determine if the evidence is factually sufficient, an appellate court reviews
all of the evidence in a neutral light.  Watson v. State, 204 S.W.3d
404, 414 (Tex. Crim. App. 2006) (overruling in part Zuniga v. State, 144
S.W.3d 477 (Tex. Crim. App. 2004)); Johnson v. State, 23 S.W.3d 1, 10-11
(Tex. Crim. App. 2000); Cain v. State, 958 S.W.2d 404, 407-08 (Tex.
Crim. App. 1997); Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App.
1996).  Then, the reviewing court determines whether the evidence supporting
the verdict is so weak that the verdict is clearly wrong and manifestly unjust
or whether the verdict is against the great weight and preponderance of the
conflicting evidence.  Watson, 204 S.W.3d at 414-15; Johnson, 23
S.W.3d at 10-11.  The jury, as the finder of fact, is the sole judge of the
weight and credibility of the witnesses’ testimony.  Tex. Code Crim. Proc. Ann. art. 36.13 (Vernon 2007); art.
38.04 (Vernon 1979).

Evidence
at Trial

            The
record shows that RKS was twenty-two years old at the time of trial.  She lost most
of her vision when she was seventeen years old as a result of having a brain
tumor.  She testified that she could see shapes and colors.  RKS said that she
walked with a cane.  She used public transportation to meet her needs.  On
December 30, 2006, RKS took busses to three businesses in an attempt to cash
her SSI check.  She testified that the first two businesses would not cash her
check but that Albertsons cashed it for her.

After
leaving Albertsons, RKS walked toward the bus stop located at South 14th and
Pioneer streets.  She intended to take a bus to United Supermarket on South 14th
Street.  RKS testified that, as she was walking to the bus stop, a man drove up
in a white van and offered her a ride.  The police later identified the man as
appellant.  RKS testified that she accepted appellant’s offer of a ride because
she had been on her feet all day long and wanted to get to United as fast as
possible.  RKS said that she was unable to tell what appellant looked like. 
RKS testified that she asked appellant to take her to United.  RKS testified
that she never propositioned appellant for prostitution.

Appellant
asked RKS about her vision, and in response, RKS explained the extent of her
visual impairment to appellant.  Appellant asked RKS whether she would mind if
he ran an errand before taking her to United.  RKS told appellant that it was
okay for him to run the errand.  RKS testified that appellant drove past
McMurry University and then drove to an abandoned area.  RKS testified that she
had no idea where they were and that she was extremely afraid. 

RKS
testified that appellant gave her two options.  Appellant told her that she
could either have sex with him and then he would take her to United or she
could get out of the van.  RKS said that she did not get out of the van because
she did not know where she was and did not know what would happen to her if she
did.  RKS testified that she asked appellant, “Can’t you just take me to
United?”  Appellant again said that he would take her to United if she had sex
with him.  RKS repeated, “Can’t you just take me to United?”  Appellant
repeated that he would take her to United if she had sex with him.  RKS
testified that she said “[o]kay” and that she told appellant she would do
whatever he wanted her to do.  She testified that she did not willingly consent
to having sex with appellant but that she was “willing to do whatever it took
to get out of that situation because [she] was afraid.”

Appellant
asked RKS whether she would rather get into the backseat and have sex with him
or give him a blow job.  RKS said, “Whatever you want.”  RKS was sitting in the
front passenger seat of the van.  Appellant asked RKS to take off her jacket,
and RKS did so. Appellant then told RKS to take off her shirt, and RKS
complied.  RKS testified that appellant exposed himself.  She said that
appellant grabbed her hair and head, pulled her down into his lap, pushed her
head down, and penetrated her mouth with his penis.  RKS testified that “[h]is
penis was in my mouth, and he pushed my head down and I couldn’t breathe, and
so I tried to jerk my head up to breathe and he just pushed it back down
again.”  RKS said that she was “on the verge of gagging a couple of times.”  She
said that “[she] couldn’t even come up to cough” and that appellant repeatedly
pushed her head back down.  RKS said that she did not fight with appellant when
he shoved her head onto his penis because she was afraid that, if she did,
appellant might injure or kill her.  When appellant ejaculated, he held down
RKS’s head and told her to “swallow it.”

After
appellant ejaculated, he allowed RKS to sit up in the passenger seat and to put
on her shirt and jacket.  Appellant asked RKS for her wallet.  RKS testified
that appellant looked at her identification card and said, “[Y]ou better not
tell anybody because now I know where you live.”  Appellant handed RKS’s wallet
back to her.  Appellant then told RKS to get out of the van and walk. 
Appellant handed RKS her cane, and RKS got out of the van.                                       

RKS
testified that she started walking and that appellant drove away.  RKS said
that she had a cell phone when she got into the van but that she could not find
it after she got out of the van.  She said that she walked until she found a
paved road.  When RKS heard a vehicle, she waved her arms and screamed for
help.  Gary Jay, the driver of the vehicle, saw RKS frantically waiving at
him.  He stopped to help her.  RKS told him that a man had forced her to
perform oral sex.  Jay testified that RKS was trembling, that it looked like
she was in shock, and that her hair was messed up.  Jay drove RKS to the police
station.

Abilene
Police Officer Eric Katona was working at the desk at the police station when
Jay and RKS arrived.  Officer Katona testified that RKS was visibly upset and
that she was crying.  RKS told him that a man had forced her to perform oral
sex.  Officer Katona called for an ambulance.  When the ambulance arrived, RKS
was taken to Hendrick Medical Center for examination.  Carolyn Havins, a sexual
assault nurse examiner at Hendrick, performed an examination of RKS.  Using
Q-tips, Nurse Havins took oral swabs from RKS’s mouth.

The
next day, RKS was at her mother’s house.  RKS testified that appellant’s wife,
Crystal Camnetar, brought a cell phone to the house.  Crystal asked RKS whether
the cell phone belonged to her, and RKS recognized the phone to be hers.  RKS
testified that Crystal said that she had discovered the address of the house by
doing a reverse search on the phone number listed under “home” on the cell
phone.  Crystal had found RKS’s cell phone in the van.  RKS testified that
Crystal said that appellant had been driving the van the day before.  RKS’s
stepfather called the police, and Abilene Police Officer Anthony Joeris went to
the house.  When Officer Joeris arrived, RKS was inside the house, and
appellant and Crystal were outside the house.  Officer Joeris learned that the
van was at a church.  He went to the church and took pictures of the van. 
Officer Joeris testified that Crystal told him that appellant usually drove the
van.

Abilene
Police Detective Willie Ford obtained a search warrant for taking DNA samples
from appellant.  Using buccal swabs, Detective Ford collected DNA samples from
appellant.  Detective Ford also collected DNA samples from RKS.  Naomi McDonald,
a forensic scientist with the DPS crime lab in Lubbock, tested the oral swabs
that Nurse Havins had collected from RKS at Hendrick.  The testing revealed the
presence of semen and spermatozoa.  McDonald then took the DNA samples that had
been obtained from appellant and RKS and proceeded with a DNA analysis.  Based
on her analysis, McDonald concluded that the DNA profile from the sperm
fraction of the oral swab that had been taken from RKS at the hospital was
consistent with a mixture of appellant’s DNA and RKS’s DNA.

Analysis

In
his brief, appellant asserts that, “[w]hen taken as a whole[,] [RKS’s]
testimony indicates that she was coerced to perform oral sex but she was not
subjected to physical force or violence as alleged in the indictment.”  Appellant
relies on testimony by RKS during cross-examination that, when faced with
choosing between giving appellant oral sex or being left stranded in an
unfamiliar area, she agreed to perform oral sex.  RKS further testified that
there had been no physical force or violence when she agreed to perform oral
sex.  Based on this testimony, appellant contends that the evidence was
factually insufficient to establish that he used physical force or violence to
compel RKS to perform oral sex.

RKS
testified that she did not consent to performing oral sex on appellant.  RKS
testified that she was willing to do whatever it took to get out of the
situation because she was afraid.  Based on RKS’s testimony, the jury could
have reasonably concluded that RKS did not willingly agree to perform oral sex on
appellant but only agreed to perform oral sex out of fear.  RKS testified that
she did not initiate the oral sex.  RKS said that, instead, appellant grabbed
her by the hair and head, pulled her down into his lap, pushed her head down,
and forced her to perform oral sex on him.  RKS also said that she tried to
jerk her head up to breathe but that appellant repeatedly pushed her head back
down again.  RKS’s testimony supports the jury’s conclusion that appellant compelled
her to submit to oral sex by the use of physical force.  See Gonzales v.
State, 2 S.W.3d 411, 415 (Tex. App.—San Antonio 1999, no pet.) (Evidence
that appellant “threw” or “laid” the victim on a couch and then prevented the
victim from moving by lying on top of her was legally and factually sufficient
to prove that the appellant used physical force.); Barnett v. State, 820
S.W.2d 240, 241 (Tex. App.—Corpus Christi 1991, pet. ref’d) (Evidence that the
appellant straddled the victim’s chest, moved the victim’s head in an apparent
thrusting motion, and pushed the victim’s head back down when the victim
attempted to get up was sufficient to show that the appellant used physical
force.). 

The
evidence is factually sufficient to support appellant’s conviction.  We
overrule appellant’s sole issue.

This
Court’s Ruling

            We affirm the trial
court’s judgment.

 

 

                                                                                                TERRY
McCALL

                                                                                                JUSTICE


 

July 8, 2010

Do not publish. 
See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









                [1]RKS is short for the pseudonym – PSEURKS – that was
used in the indictment.