

NUMBER 13-15-00120-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ROLANDO MEDRANO,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                 Appellee.

**On appeal from the 105th District Court
of Kleberg County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Perkes
Memorandum Opinion by Chief Justice Valdez**

A Kleberg County jury found appellant Rolando Medrano guilty of two counts of aggravated sexual assault of a disabled individual, and the trial court sentenced him to life in prison. *See* TEX. PENAL CODE ANN. § 22.021(a)(2)(c) (West, Westlaw through 2015 R.S.). By two issues, which we address in reverse order, Medrano contends that: (1) the trial court erred in failing to charge the jury regarding the statutory definition of consent

under section 22.011(b) of the Texas Penal Code; and (2) the evidence is legally insufficient to prove that the complainant did not consent to the sexual conduct alleged in the State's indictment. *See id.* § 22.011(b) (West, Westlaw through 2015 R.S.). We affirm.

## I. BACKGROUND

Medrano and M.S. met online and began a dating relationship. The complainant in this case is M.S.'s adult daughter, K.S. K.S. is generally confined to a wheelchair due to cerebral palsy, a chronic disorder which affects her muscle tone, movement, and motor skills. K.S. has a twin brother, C.S., who also suffers from cerebral palsy.

At the time of the event alleged in the State's indictment, K.S. was twenty years old. The evidence at trial showed that Medrano met K.S. and C.S. approximately two weeks into his dating relationship with their mother and that they affectionately referred to Medrano as "Dad." The evidence further showed that although Medrano was dating M.S., he took particular interest in K.S. K.S. testified that Medrano one time asked her if she would be interested in dating him, to which K.S. replied: "No, because you're with my mom and that would just be weird."

On or about February 14, 2014, K.S. and C.S. spent the night at Medrano's house without M.S. being present. K.S. testified that she and C.S. were watching a movie in Medrano's bedroom when Medrano sent C.S. to take a shower. K.S. testified that after C.S. left the room, Medrano got on top of her and said, "I really love you. I think you're beautiful [.]" K.S. responded: "Well, I understand I'm pretty but I don't want this." K.S. testified that Medrano then kissed her repeatedly, took her pants off, and "forced" her legs open. K.S. testified that she told Medrano that he was "breaking" her legs and that

2

Medrano responded: "No, I'm not. I know what I'm doing." K.S. testified that she then kicked Medrano off the bed with her knees, but Medrano got back on top of her and put his penis inside her sexual organ, saying "you know you want this, you know you want this." K.S. also testified that Medrano "forc[ed]" her to put his penis inside her mouth by holding her head down. C.S. testified that when he returned to the bedroom from taking a shower, he saw what was occurring and heard K.S. crying for Medrano to stop.

K.S. testified that after Medrano got off of her, she "freak[ed] out" and went to the bathroom feeling pain:

> I was really hurting. Like I was in pain like bad. I've never felt anything like that before so I started freaking out and I didn't know what to do, and I went to the bathroom and I was bleeding. I was like, "Why the heck am I bleeding?" And I started freaking out. I was like, "I don't know what to do," and I just got in the shower and I was just, "I just have to clean myself. I can't stand being like this."

K.S. testified that after washing off in the bathroom, she returned to the bedroom and confronted Medrano, stating: "You are not going to get away with this. . . . I will put up a fight. . . . I don't care if it takes me however long to talk to people. You are not getting away with this." According to K.S., Medrano responded that nobody would ever believe her story and threatened to kill a member of her family if she ever said anything about it.

K.S. testified that it took her two weeks to tell M.S. what happened because she was afraid of what Medrano might do. After learning what happened, M.S. immediately reported the incident to the police. Shortly thereafter, Medrano was interviewed at the police station concerning the incident. During his interview, Medrano initially denied that he had sex with K.S. and maintained that he was only in a relationship with M.S. but later admitted: "I was doing them both." Medrano was arrested and charged with two counts of aggravated sexual assault of a disabled person for penetrating K.S.'s mouth and sexual

3

organ without her consent.  Counts one and two of the State's indictment specifically alleged the following:

COUNT 1

[Medrano], Defendant, on or about February 14, 2014, in Kleberg County, Texas did then and there intentionally or knowingly cause the penetration of the sexual organ of K.S., a person who was then and there a disabled individual, by Defendant's sexual organ, without the consent of K.S.

COUNT 2

[Medrano], Defendant, on or about February 14, 2014, in Kleberg County, Texas did then and there intentionally or knowingly cause the penetration of the mouth of K.S., a person who was then and there a disabled individual, by Defendant's sexual organ, without the consent of K.S.

The case was called for a jury trial, during which the State presented the evidence set out above.  Medrano did not dispute that he committed the sexual acts described in counts one and two of the State's indictment; instead, he disputed the State's allegation that these acts were committed without K.S.'s consent.  Medrano argued that his sexual encounter with K.S. was consensual and that K.S.'s testimony to the contrary was so rife with inconsistencies that the jury should not believe her.  Medrano also suggested through cross examination of the State's witnesses that M.S. and K.S. mounted a false allegation of rape to spite him for being unfaithful to M.S.

At the close of the evidence, the jury found Medrano guilty as charged in both counts of the State's indictment, and the trial court sentenced him to life in prison.  This appeal followed.

## II.    JURY CHARGE

By his second issue, Medrano contends that the trial court erred in failing to specifically define in the abstract portion of the jury charge the circumstances in which a

4

sexual assault is committed without the consent of another person under section 22.011(b) of the Texas Penal Code. *See* TEX. PENAL CODE ANN § 22.011(b). Medrano asserts that the trial court's error merits a new trial.

## A. Did the Trial Court Err?

The trial court has a duty to deliver to the jury a written jury charge distinctly setting forth the "law applicable to the case." TEX. CODE CRIM. PROC. art. 36.14 (West, Westlaw through 2015 R.S.). A statutorily defined word or phrase must be included in the jury charge as part of the "law applicable to the case." *Ouellette v. State*, 353 S.W.3d 868, 870 (Tex. Crim. App. 2011); *Villarreal v. State*, 286 S.W.3d 321, 329 (Tex. Crim. App. 2009); *Arline v. State*, 721 S.W.2d 348, 352 (Tex. Crim. App. 1986). Regarding the issue of consent, the relevant law applicable to this case is section 22.011(b) of the penal code.

Section 22.011(b) defines eleven circumstances in which a sexual assault is committed without the consent of another person. *See* TEX. PENAL CODE ANN § 22.011(b)(1)-(11). Specifically, section 22.011(b) provides that a sexual assault is without the consent of another person if:

1.  the actor compels the other person to submit or participate by the use of physical force or violence;

2.  the actor compels the other person to submit or participate by threatening to use force or violence against the other person, and the other person believes that the actor has the present ability to execute the threat;

3.  the other person has not consented and the actor knows the other person is unconscious or physically unable to resist;

4.  the actor knows that as a result of mental disease or defect the other person is at the time of the sexual assault incapable either of appraising the nature of the act or of resisting it;

5

5. the other person has not consented and the actor knows the other person is unaware that the sexual assault is occurring;

6. the actor has intentionally impaired the other person's power to appraise or control the other person's conduct by administering any substance without the other person's knowledge;

7. the actor compels the other person to submit or participate by threatening to use force or violence against any person, and the other person believes that the actor has the ability to execute the threat;

8. the actor is a public servant who coerces the other person to submit or participate;

9. the actor is a mental health services provider or a health care services provider who causes the other person, who is a patient or former patient of the actor, to submit or participate by exploiting the other person's emotional dependency on the actor;

10. the actor is a clergyman who causes the other person to submit or participate by exploiting the other person's emotional dependency on the clergyman in the clergyman's professional character as spiritual adviser; or

11. the actor is an employee of a facility where the other person is a resident, unless the employee and resident are formally or informally married to each other under Chapter 2, Family Code.

*Id.*

Of the eleven circumstances enumerated above, the first and third circumstances apply to this case based on the evidence.[1] Because the abstract portion of the jury charge did not specifically enumerate those circumstances, we find, and the State concedes, that

---

[1] The State argues that the evidence implicated the seventh circumstance enumerated above because Medrano threatened to kill K.S.'s family member if she told anybody about what happened. *See* TEX. PENAL CODE ANN. § 22.011(b)(7) (West, Westlaw through 2015 R.S.) (providing that a sexual assault is nonconsensual if the defendant compels the victim to submit or participate by threatening to use force or violence against any person, and the victim believes that the defendant has the ability to execute the threat). We disagree. K.S. testified that Medrano threatened to kill K.S.'s family member after he committed the sexual acts. Thus, Medrano's threat could not have been made to compel K.S. to submit to any sexual acts that occurred before the threat was made. As such, the State's mode of proving lack of consent was limited the first and third circumstance listed above.

6

the trial court erred in failing to set forth the law applicable to the case. *See* TEX. CODE CRIM. PROC. art. 36.14; *see also Ouellette*, 353 S.W.3d at 870. However, the State maintains that a new trial is not the appropriate remedy because the error in the jury charge was harmless.

**B. Was the Error Harmful?**

When, as here, the defendant objects to an error in the jury charge for the first time on appeal, we may not order a new trial unless the record demonstrates that the defendant suffered "egregious" harm as a result of the error. *See Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). A defendant suffers egregious harm when the error "affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Lovings v. State*, 376 S.W.3d 328, 337 (Tex. App.— Houston [14th Dist.] 2012, no pet.) (citing *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996)). In making this determination, we review the entire record, including: (1) the jury charge, (2) the arguments of counsel, (3) the entirety of the evidence, including the contested issues and weight of the probative evidence, and (4) any other relevant factors revealed by the record as a whole. *See Hollander v. State*, 414 S.W.3d 746, 749–50 (Tex. Crim. App. 2013).

Here, the jury charge conveyed to the jury that K.S.'s lack of consent to the sexual conduct alleged in counts one and two of the State's indictment was a necessary element of aggravated sexual assault. Specifically, the abstract portion of the jury charge provided as follows: "A person commits the offense of aggravated sexual assault of a disabled individual if he intentionally or knowingly causes the penetration of the sexual organ or the mouth of another person, *without that person's consent*, and that person is a disabled

7

individual." The application portion of the jury charge then instructed the jury to acquit Medrano unless he committed the sexual conduct alleged in counts one and two of the State's indictment "without the consent of [K.S.]." Thus, the charge conveyed to the jury an understanding that Medrano could not be found guilty of aggravated sexual assault if K.S. consented. Although the charge afforded the jury this understanding, it provided no statutory definition regarding the specific circumstances in which a sexual assault is committed without the consent of another person.

The court of criminal appeals has held that "when the statutory definition [of a term] is not included in the [jury] charge, it is assumed the jury would consider the commonly understood meaning [of the term] in its deliberations." *Olveda v. State*, 650 S.W.2d 408, 409 (Tex. Crim. App. 1983). The dictionary defines "consent" as "permission, approval, or assent" and gives the example, "to willingly engage in a sexual act." *Lovings*, 376 S.W.3d at 338 (citing WEBSTER'S NEW WORLD COLLEGE DICTIONARY 310 (4th ed.2001)). As such, "engaging in a sexual act 'without consent' would be commonly understood to mean doing so unwillingly." *Id.* In this case, the relevant statutory circumstances in which a sexual act is deemed nonconsensual include: (1) "the actor compels the other person to submit or participate by the use of physical force or violence"; or (2) "the other person has not consented and the actor knows the other person is . . . physically unable to resist." TEX. PENAL CODE ANN. § 22.011(b)(1), (3).

Neither statutory circumstance enumerated above defies the common-sense understanding of what it means to obtain something without the consent of another person. In other words, it is common sense that a person has not consented to a sexual act if her submission to such act was compelled through the use of physical force or

8

violence; it is also common sense that a person has not consented to a sexual act if the person has not actually consented to such act and she lacks the physical ability to resist. *See Lovings*, 376 S.W.3d at 338 (finding that the error, if any, in failing to define the relevant statutory circumstances of consent did not cause egregious harm to a defendant accused of sexual assault because the lay understanding of what it means to not consent closely resembles the relevant statutory meaning). Because the common-sense understanding of consent closely resembles the statutory meaning of that term, we do not believe that this is the kind of case where an omitted statutory definition was necessary to correct or complete the jury's understanding of an essential element. *Compare Plata v. State*, 926 S.W.2d 300, 302 (Tex. Crim. App. 1996) (observing that the "failure to give an abstract instruction [calls for a new trial] only when such an instruction is necessary to a correct or complete understanding of concepts or terms in the application part of the charge"), *overruled on other grounds, Malik v. State,* 953 S.W.2d 234 (Tex. Crim. App. 1997); *with MacDougall v. State*, 702 S.W.2d 650 (Tex. Crim. App. 1986) (holding that the failure to include the definition of "deception" in the abstract portion of the jury charge was reversible error where the State's theory of conviction depended on proof of theft by deception and the elements of deception were not included in the application paragraph).

Furthermore, the evidence and argument of counsel did not confuse the jury regarding the consent issue. This was a classic he-said-she-said case in which Medrano and the State disagreed about whether K.S. consented. K.S. testified, in essence, that she suffers from cerebral palsy, a debilitating physical condition, and that Medrano sexually assaulted her by using physical force despite her consistent rejection of his advances. Defense counsel responded that K.S. was not a credible witness because

9

some of her testimony regarding the incident was inconsistent with certain statements she made before trial. From a strategic standpoint, this was a sound defensive strategy because Medrano's conduct fit the statutory definition of non-consent if the jury believed her testimony. Medrano never argued that K.S. consented even under her version of the event. Considering the state of the evidence and the arguments of counsel, we do not believe that omitting the relevant statutory definition of non-consent from the jury charge affected Medrano's defensive theory that K.S. was not telling the truth about what happened. *See Lovings*, 376 S.W.3d at 338–39 (concluding that the definition of non-consent omitted from the jury charge was harmless, in part, because the defensive theory challenged the credibility of the sexual-assault complainant's testimony and because the omitted definition would not have assisted the jury in assessing the complainant's credibility).[2]

We conclude that the jury charge's omission of the relevant statutory definition of non-consent did not affect the very basis of the case, did not deprive Medrano of a valuable right, and did not vitally affect his defensive theory. *See Ngo*, 175 S.W.3d at 743–44. Therefore, Medrano did not suffer egregious harm. *See id.* We overrule Medrano's second issue.

### III.    LEGAL SUFFICIENCY

By his first issue, Medrano contends that the evidence is legally insufficient to prove that K.S. did not consent to the sexual acts alleged in the State's indictment. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(A).

---

[2] Regarding the fourth harm factor, our review of the record has disclosed no other relevant information that requires our consideration, and Medrano provides none. *See Hollander v. State*, 414 S.W.3d 746, 749–50 (Tex. Crim. App. 2013).

10

In reviewing the legal sufficiency of the evidence to support a criminal conviction, we view the evidence in the light most favorable to the prosecution and then ask whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Brooks v. State*, 323 S.W.3d 893, 902 n.19 (Tex. Crim. App. 2010). Under this standard, the jury is the "exclusive judge of the credibility of witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence." *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).[3]

The hypothetically correct jury charge in this case would have instructed the jury to find that K.S. did not consent to the sexual acts alleged in the State's indictment if: (1) Medrano used actual physical force to compel her to participate, or (2) K.S. did not actually consent and Medrano knew that K.S. was not reasonably expected to resist due to the physical impairment of her cerebral palsy. *See* TEX. PENAL CODE ANN. § 22.011(b)(1), (3); *see also Elliott v. State*, 858 S.W.2d 478, 485 (Tex. Crim. App. 1993); *Barnett v. State*, 820 S.W.2d 240, 241 (Tex. App.—Corpus Christi 1991, pet. ref'd).

Here, K.S. testified that after she kicked Medrano off the bed, he got on top of her, forced her legs open, and put his penis into her sexual organ without her consent. K.S. further testified that Medrano held her head down while he forced his penis into her mouth. C.S. testified that he witnessed Medrano committing these acts while K.S. cried for him

---

[3] A hypothetically correct jury charge is one that "sets out the law, is authorized by the indictment, does not unnecessarily increase the state's burden of proof or unnecessarily restrict the state's theories of liability, and adequately describes the particular offense for which the defendant was tried." *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

to stop. Furthermore, as the State points out, the jury could have reasonably inferred that Medrano would not have told K.S. "You know you want this" while performing these acts if K.S. had consented. Finally, during his police interview, Medrano initially concealed and denied having sex with K.S. but then later admitted it. *See Ex Parte Weinstein*, 421 S.W.3d 656, 668 (Tex. Crim. App. 2014) (observing that a defendant's attempts to conceal evidence and inconsistent statements are probative of wrongful conduct and circumstances of guilt). When viewed in the light most favorable to the jury's verdict, this evidence supports a finding that Medrano committed the sexual acts described in counts one and two of the State's indictment without K.S.'s consent. *See Jackson*, 443 U.S. at 319.

Medrano argues that this evidence is legally insufficient to show that K.S. did not consent because K.S. expressed affection for Medrano in a written letter addressed to him before the incident, which reads: "I love you a lot. I want to be with you, you make me happy. No one ever show [sic] me love like you do. Never forget me." However, the jury could have reasonably interpreted this letter as a platonic expression of appreciation for Medrano as a father figure. And even if the jury believed that K.S. intended to convey a romantic message to Medrano, the jury could have reasonably found that it did not give Medrano permission to force sexual relations on K.S. on the day of the incident without her consent.

Medrano also argues that the evidence is legally insufficient to show that K.S. did not consent because, according to her own testimony, she was strong enough to kick him off the bed. Medrano appears to be arguing that K.S.'s cerebral palsy is not a physical impairment that rendered her physically unable to resist Medrano because she kicked

12

him off the bed.  However, the jury did not have to find that K.S.'s cerebral palsy rendered her physically unable to resist Medrano in order to find that K.S. did not consent; as previously mentioned, a hypothetically correct jury charge would have instructed that Medrano committed aggravated sexual assault if he compelled K.S. to submit by the use of physical force, regardless of K.S.'s physical ability to resist.  *See* TEX. PENAL CODE ANN. § 22.011(b) (1), (3) (providing that a sexual assault is without the consent of the other person if "the actor compels the other person to submit or participate by the use of physical force. . . [*or*] the other person has not consented and the actor knows the other person is . . . physically unable to resist").

Medrano further argues that the evidence is legally insufficient to show that K.S. did not consent because there is no evidence that she actually resisted, for example, by leaving the bedroom or calling for help.  However, in determining whether a sexual assault is nonconsensual, our law focuses on the defendant's actions rather than the complainant's resistance.  *See Elliott*, 858 S.W.2d at 485; *Barnett*, 820 S.W.2d at 241 (observing that, in determining the consent issue, the focus is upon the defendant's actions rather than the complainant's resistance).  In any event, the jury could have reasonably found that K.S. did resist Medrano to the extent of her ability by kicking him off the bed and by crying for him to stop.

Finally, Medrano argues that the evidence is legally insufficient to show that K.S. did not consent because there is no evidence that she suffered any physical trauma to her sexual organ after the incident.  However, bodily injury is not an element of the offense of aggravated sexual assault.  *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(A); *see also*

13

*Rodriguez v. State*, 819 S.W.2d 871, 873–74 (Tex. Crim. App 1991); *Mathis v. State*, 443 S.W.3d 391, 396 (Tex. App.—Austin 2014, no pet.).

Viewing the evidence in the light most favorable to the jury's verdict, the evidence is legally sufficient to support the jury's finding that Medrano committed the sexual acts described in counts one and two of the State's indictment without K.S.'s consent. *See* TEX. PENAL CODE ANN. § 22.011(b)(1); *see also Jackson*, 443 U.S. at 319. We therefore overrule his first issue.

## IV. CONCLUSION

We affirm the trial court's judgment.

/s/ Rogelio Valdez
ROGELIO VALDEZ
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
2nd day of September, 2016.