

# NUMBER 13-23-00293-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

KADIR GUNER,                                                              Appellant,

v.

THE STATE OF TEXAS,                                                       Appellee.

## ON APPEAL FROM THE 187TH DISTRICT COURT
## OF BEXAR COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Justices Longoria, Silva, and Peña**
**Memorandum Opinion by Justice Peña**

Appellant Kadir Guner appeals his conviction for sexual assault, a second-degree felony. *See* TEX. PENAL CODE ANN. § 22.011(b)(1). After returning a verdict of guilty, a jury sentenced Guner to eight years' imprisonment. In two issues, Guner argues that (1) the evidence was legally insufficient to support his conviction, and (2) the State made

improper jury arguments during closing. We affirm.[1]

## I. BACKGROUND

Guner was indicted with one count of sexual assault. *See id*. The indictment alleged that on or about February 27, 2018, Guner

> intentionally and knowingly cause[d] the SEXUAL ORGAN of [Jane][2] . . . to CONTACT the SEXUAL ORGAN [3] of [Guner], said act having been committed without the consent of [Jane], in that [Guner] COMPELLED [Jane] TO SUBMIT AND PARTICIPATE BY THE USE OF PHYSICAL FORCE AND VIOLENCE[.]

A jury trial was commenced on February 28, 2023, at which the following evidence was adduced, among which was the testimony of Jane, who was twenty-three years old at the time of testifying. In February of 2018, when Jane was eighteen years old, her friend Karen arranged for Jane to interview at a Turkish restaurant with Guner, the restaurant manager. After interviewing with Guner, Jane was offered the job and asked to report to work the following day. Jane testified that for the first few hours of her first day everything was fine, and she mostly shadowed her friend Karen. At some point, Guner told Karen to take a break. Guner shortly thereafter asked the two remaining employees in the restaurant to take their breaks. Jane testified that she was sitting alone in one of the restaurant's booths when Guner came to sit at the same booth across from her to talk. The conversation became concerning to Jane when Guner asked her if she had a

---

[1] This case is before this Court on transfer from the Fourth Court of Appeals in San Antonio pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

[2] To protect the identity of the complainant, we refer to her and her friend by fictitious names. *See* TEX. CONST. art. I, § 30(a)(1) (providing that a crime victim has "the right to be treated . . . with respect for the victim's dignity and privacy throughout the criminal justice process").

[3] The indictment also alleged contact of Jane's sexual organ by Guner's mouth. The State omitted this language from the jury charge without objection.

2

boyfriend, which she felt was "inappropriate." Guner then stood up and moved to sit next to Jane. Jane testified that Guner put "his hand on my back," and was talking to her, "[a]nd that's when he also grabbed my face and then proceeded to kiss me." Guner "then said we should go into the back to the storage room." He then turned off the restaurant's "open" sign and walked her to the back to the storage room by putting "[h]is hand" "on [her] back." According to Jane, Guner also locked the door. Jane testified that as this was happening she felt "[v]ery scared," and that she had realized that something was wrong because Guner had sent everybody on a break. According to Jane, she felt that she did not "have power, didn't have a say," and she "just kind of . . . shut down."

After walking to the storage room, Guner "just starts kissing" Jane. Guner then lifted up Jane's shirt, and "start[ed] kissing [Jane] on [her] chest," including her breasts. Guner then told Jane to lay down. Jane then began "pulling down [her] pants," and Guner "pulled them down . . . to [her] ankles." It was during this time that Jane told Guner to "please stop," and that she "just want[ed] to go home." With Jane now laying down, Guner inserted his penis into her vagina, and then ejaculated into a rag in the storage room. Guner told Jane to go to the restroom to clean herself up. Jane then went to the restroom to clean herself and cried. After returning to the main restaurant area, Guner asked Jane to sit next to him, and he began saying things that troubled her. For example, after telling Jane that he would need her to go purchase supplies for the restaurant, Guner "said he wanted to pick [her] up and take [her] to a hotel room and that [they] could finish there." Jane testified that "he also just made comments about [her] getting his name tattooed on [her] and saying that he wanted [her] to have his children."

Jane then stood up to get her phone charger, at which point she texted Karen for

3

help.[4] Jane then went to the bathroom and called her mother and informed her that her "manager did something to [her] that he shouldn't have," and asking her mother to pick her up. Jane then left through the back of the restaurant to a store nearby, where she waited until law enforcement arrived. On cross-examination, defense counsel challenged Jane's recollection of events, especially her testimony that she told Guner to stop and that she wanted to go home. Jane admitted that she did not push or otherwise use any physical force to get Guner to stop the assault. She also affirmed that Guner "didn't threaten" her or "use any physical force to get" her to the storage room.

In the Sexual Abuse Nurse Examiner's (SANE) Report entered into evidence, Jane reported that Guner "turned [her] face and stuck his tongue in [her] mouth," when they were first sitting at the restaurant booth. After Guner "locked the front door," Guner began kissing her again and "lifted [her] shirt and started kissing [her] breast." The SANE Report also details how Jane left the restaurant and ran to the store nearby, where she told a female employee that "my boss had just raped me." At the close of evidence, a jury returned a verdict of guilty and sentenced Guner to eight years' imprisonment. This appeal followed.

## II.    SUFFICIENCY OF THE EVIDENCE

By his first issue, Guner argues that the evidence was legally insufficient to establish that he committed sexual assault "by physical force or violence," as charged in the indictment. Pointing to the language of the sexual assault statute, which allows sexual

---

[4] A copy of these text messages were entered into evidence. In these texts, Jane tells Karen to come pick her up, stating "He kissed me," "It's just us," "Please hurry," "I don't know what to do," "He doesn't know I'm texting you," "Just stay with me[,] Till my mom comes," and "Hurry[,] He wants me to leave with him."

assault to be proven by either "physical force, violence, or coercion," Guner argues that the evidence against him is insufficient as charged because, at most, he is guilty of sexual assault by coercion, which was not one of the alternatives charged in the indictment. *See* TEX. PENAL CODE ANN. § 1.07(a)(9) (defining "coercion" as a "threat, however communicated," to "commit an offense," "to inflict bodily injury in the future on the person threatened or another," "to accuse a person of any offense," "to expose a person to hatred, contempt, or ridicule," "to harm the credit or business repute of any person," or "to take or withhold action as a public servant, or to cause a public servant to take or withhold action").

Further, Guner argues that the State, by alleging in the indictment that he committed sexual assault through compulsion by use of "physical force *and* violence," was subsequently required to satisfy a higher evidentiary burden than would be the case if the indictment had used those terms in the disjunctive. During the charge conference, defense counsel objected to the inclusion of the phrase "physical force or violence" in the jury charge and argued that the jury charge was required to conform to the indictment. Defense counsel argued that the use of the disjunctive "would allow the jury to convict on proof different from, less than, that required to prove the allegation" in the indictment. The trial court overruled Guner's objection.

## A.    Standard of Review & Applicable Law

"Under the Due Process Clause, a criminal conviction must be based on legally sufficient evidence." *Harrell v. State*, 620 S.W.3d 910, 913 (Tex. Crim. App. 2021) (citing *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015)). Evidence is legally sufficient if "any rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt." *Joe v. State*, 663 S.W.3d 728, 731–32 (Tex. Crim. App. 2022) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Under a legal sufficiency review, we view the evidence in the light most favorable to the verdict, while recognizing that "[t]he trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts." *Id.* at 732; *see Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (noting that "the reviewing court is required to defer to the jury's credibility and weight determinations"). We need not "disprove all reasonable alternative hypotheses that are inconsistent with the defendant's guilt," but rather we consider "only whether the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012) (citations omitted).

We measure the evidence produced at trial against the essential elements of the offense as defined by a hypothetically correct jury charge. *David v. State*, 663 S.W.3d 673, 678 (Tex. Crim. App. 2022) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "A hypothetically correct jury charge 'accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240). The "law" as "authorized by the indictment" includes the statutory elements of the offense as modified by the charging instrument. *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000).

"[A]lthough the indictment may allege the differing methods of committing the

6

offense in the conjunctive, it is proper for the jury to be charged in the disjunctive." *Williams v. State*, 474 S.W.3d 850, 855 (Tex. App.—Texarkana 2015, no pet.) (quoting *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991)); *see, e.g., Hernandez v. State*, 470 S.W.3d 862, 867 (Tex. App.—Fort Worth 2015, pet. ref'd) ("[A]lthough the State alleged in the indictment that Appellant 'intentionally or knowingly threaten[ed] Indalacio Quintero with imminent bodily injury by pointing a firearm at Indalacio Quintero *and* threatening to shoot Indalacio Quintero,' the jury charge properly asked the jury whether Appellant 'intentionally or knowingly threaten[ed] Indalacio Quintero with imminent bodily injury by pointing a firearm at Indalacio Quintero *or* threatening to shoot Indalacio Quintero.'").

A sexual assault is without the consent of the other person if "the actor compels the other person to submit or participate by the use of physical force, violence or coercion[.]" TEX. PENAL CODE ANN. § 22.011(b)(1). The terms "force" and "violence" are not defined in the penal code "and so we interpret those terms in accordance with their ordinary meaning." *See Dobbs v. State*, 434 S.W.3d 166, 171 (Tex. Crim. App. 2014). The dictionary definition of "force" includes "strength or energy exerted or brought to bear" and "violence" includes "exertion of physical force so as to injure or abuse." MERRIAM– WEBSTER'S COLLEGIATE DICTIONARY 489, 1396 (11th ed. 2008); *see also Arredondo v. State*, No. 04-08-00248-CR, 2009 WL 1900416, at *4 (Tex. App.—San Antonio July 1, 2009, pet. ref'd) (mem. op., not designated for publication). "Under the terms of this statute, the emphasis is placed upon the actor's compulsion rather than the victim's resistance." *Carbajal v. State*, 659 S.W.3d 164, 180 (Tex. App.—El Paso 2022, pet. ref'd) (citing *Barnett v. State*, 820 S.W.2d 240, 241 (Tex. App.—Corpus Christi–Edinburg 1991,

7

pet. ref'd)). "The State is not required to demonstrate any certain threshold of force used to compel the victim's submission, only that the defendant used some force." *Id*. (citations omitted). "Physical injury to the victim is not required to prove that the actor compelled a victim to participate through force." *Id*. (citations omitted). "The degree of physical resistance by a victim does not render the evidence insufficient to prove the lack of consent." *Gonzales v. State*, 2 S.W.3d 411, 415 (Tex. App.—San Antonio 1999, no pet.). "Rather, the issue is whether sufficient evidence exists to show appellant compelled the victim's submission by actual force." *Id*.

"The facts in each individual case determines whether force was used," *Gonzales,* 2 S.W.3d at 415, and the fact-finder considers "the totality of the factual circumstances in determining whether [the victim] consent[ed]." *Brown v. State*, 576 S.W.2d 820, 823 (Tex. Crim. App. 1978); *see also Arredondo*, No. 04-08-00248-CR, 2009 WL 1900416, at *1. "A sexual-assault complainant's uncorroborated testimony alone is sufficient to support a conviction for sexual assault if the complainant informed any person, other than the defendant, of the offense within one year after the date on which the offense is alleged to have occurred." *Carbajal*, 659 S.W.3d at 180 (citing TEX. CODE CRIM. PRO. ANN. art. 38.07(a)).

## B. Discussion

There is no dispute that Jane informed another person of the offense within one year after the date on which it was alleged to have occurred, and consequently Jane's uncorroborated testimony alone may be sufficient to support Guner's conviction. *See id*. As to Jane's testimony, although she affirmed on cross-examination that Guner did not "threaten" her or use "physical force" during the offense, her testimony in its entirety

8

sufficiently alleged the use of physical force. *See Maciel v. State*, 631 S.W.3d 720, 725 (Tex. Crim. App. 2021) (noting that it "seems unreasonable to focus" on a witness's responsive testimony to questions using undefined terms from a statute in order to infer the existence or non-existence of the corresponding statutory element). For example, in *Barnett*, we found evidence "sufficient to indicate force" where the male victim testified "that appellant straddled his chest, moved [his] head apparently in a thrusting motion, and pushed [his] head back down when he attempted to get up[.]" 820 S.W.2d at 241. We found the victim's testimony sufficient even though he testified on cross-examination that appellant did not "force" him to engage in sexual contact. *Id*. The victim also acknowledged that he was physically able to leave the situation, and could have asked for help, but did not because he was "afraid" and felt "scared to death." *Id*.

Jane testified that Guner "grabbed" her face and "proceeded to kiss" her when she was first sitting at the restaurant booth. She testified that Guner "put his hand on [her] back" as he guided her to the back of the restaurant. She testified that once at the storage room, Guner "just start[ed] kissing" her. Jane testified that Guner lifted up her shirt and "start[ed] kissing [her] on [her] chest," including her breasts. Guner then told Jane to lay down. Jane then began "pulling down [her] pants," and Guner "pulled them down . . . to [her] ankles." At this point Jane told Guner to "please stop," and that she "just want[ed] to go home." Jane testified that once she was laying down, Guner then "got in between [her] legs, and then he inserted himself inside" her. All these statements describe "strength or energy exerted or brought to bear" upon Jane's person, and describe acts amounting to the use of actual force. *See Gonzales*, 2 S.W.3d at 415.

Further, Jane testified that Guner's actions made her feel unable to leave. *See*

9

*Barnett*, 820 S.W.2d at 241. Jane testified that she remembered "just standing there, like just letting him like do what he did." As Guner was guiding her to the storage room, Jane testified that she was "very scared," as if she had no power, and that she sort of "shut down." When he was kissing her chest, Jane testified that she "just felt frozen almost." These statements indicate compulsion by use of actual force. *See id; Gonzales*, 2 S.W.3d at 415. Also, the jury was presented with Jane's contemporaneous statement to an employee at a nearby store that she was "raped," which implies the use of force. *See Limonta-Diaz v. State*, 593 S.W.3d 447, 457 (Tex. App.—Austin 2020, pet. ref'd) (finding sufficient evidence of "force" to sustain sexual assault conviction based, in part, on the fact that the victim "told her brother that she had been 'raped,' which is a term that implies force used to compel sexual activity against a person's will").

We find further support for our conclusion that the evidence was sufficient in the fact that Guner's interpretation of the force required under the sexual assault statute is inconsistent with the legislature's intent in repealing Texas's old rape statute, which had required that the State prove that a defendant compelled submission "by force that overcomes such earnest resistance as might reasonably be expected under the circumstances." *Bannach v. State*, 704 S.W.2d 331, 332 (Tex. App.—Corpus Christi–Edinburg 1986, no pet.). As this Court has explained,

> By eliminating the "resistance" language from [§ 22.011], the legislature appears to have shifted the emphasis from the victim's resistance to the actor's compulsion. By merely stating that, if the actor's use of physical force or violence compels the victim to submit, the "without consent" standard is satisfied, *the legislature has made it easier for the State to prove lack of consent*.

*Id. at* 332–33 (emphasis added).

10

Guner's overarching argument that the evidence is insufficient in this case because Guner did not use *enough force* is consequently without merit. By eliminating the requirement of victim resistance, the legislature detached the term "force" from its definitional relation to such resistance. *See id*. In other words, while under the prior rape statute the question was whether a defendant used enough force to overcome the victim's resistance, under the present sexual assault statute, the question is whether physical force was used at all, without qualification. For this reason, "[t]he State is not required to demonstrate any certain threshold of force used to compel the victim's submission, *only that the defendant used some force*." *Carbajal*, 659 S.W.3d at 180 (emphasis added).

Further, we are not persuaded by Guner's argument that the evidence was insufficient because the State was required to prove the use of physical force *and* violence, which Guner argues implies a higher evidentiary burden. Although an indictment may allege different methods of committing the offense in the conjunctive, it is proper for a jury to be charged in the disjunctive. *Williams*, 474 S.W.3d at 855; *see, e.g., Gonzales*, 2 S.W.3d at 414 (conducting a sufficiency review of a conviction for sexual assault by use of "physical force or violence" where the indictment alleged the use of "physical force and violence"); *see also Gil v. State*, No. 08-05-00108-CR, 2007 WL 926470, at *6 (Tex. App.—El Paso Mar. 29, 2007, no pet.) (not designated for publication) (finding sufficient evidence that appellant "compelled the victim's submission by the use of physical force or violence," where the indictment alleged the use of "physical force and violence").

Viewing the evidence in the light most favorable to the verdict, and deferring to the jury's credibility determinations, *see Joe*, 663 S.W.3d at 731–32, we conclude that a

11

rational trier of fact could have found Guner guilty beyond a reasonable doubt based on the combined and cumulative force of the evidence along with the reasonable inferences drawn from it. *See Wise*, 364 S.W.3d at 903; *Limonta-Diaz*, 593 S.W.3d at 457 (finding sufficient evidence of the use of "physical force" where victim testified that appellant "was on top of her while she was on her back in the back seat of his car," and felt "pinned down"); *Horne v. State*, 46 S.W.3d 391, 394 (Tex. App.—Fort Worth 2001, pet. ref'd) (finding sufficient evidence of the use of force where the evidence showed that appellant had the victim "pinned to her bed so that she was unable to move," where the victim pleaded with the appellant to stop his assault, and where he "continued to grope her and penetrate her vagina with his finger"); *see also Gonzales v. State*, No. 05-02-00702-CR, 2003 WL 1647183, at *2 (Tex. App.—Dallas Mar. 31, 2003, pet. ref'd) (not designated for publication) (finding sufficient evidence of compulsion by use of force where victim testified that "appellant pulled down her shorts and underwear, put her on the trunk of his car, pulled her legs apart, and kissed and licked her vagina," and when "she refused to lie on the ground, appellant pulled her down to the ground and tried to insert his penis into her vagina"). We overrule Guner's first issue.

### III.    IMPROPER JURY ARGUMENT

By his second issue, Guner argues that the prosecutor "repeatedly misstated the law" during closing argument. During the State's closing, Guner objected to the prosecutor's supposed misstatement of law as to the use of force required for conviction when he said that "[a]ll that's required is some sort of physical touching." Defense counsel also objected to the prosecutor's reference to Jane as a "young girl" because she was eighteen at the time of the sexual assault and twenty-three when she testified. Guner

12

otherwise complains of the prosecutor's insinuations that Jane was compelled to submit by coercion, arguing that such argument was improper because coercion was not one of the alternative methods of sexual assault charged by the State.

Although the trial court failed to sustain any of Guner's objections, defense counsel was able to counter the State's theory of the case in her own closing. For example, defense counsel argued that if the jury believed that Guner only coerced Jane, then it must return a not guilty verdict. As defense counsel explained, "If you think that she was coerced in some manner, . . . that's still a not guilty. It's not in the indictment. It doesn't say coerced. It says physical force. They put it up there."

## A.    Standard of Review & Applicable Law

Closing arguments serve "to facilitate the jury in properly analyzing the evidence presented at trial so that it may 'arrive at a just and reasonable conclusion based on the evidence alone, and not on any fact not admitted in evidence.'" *Milton v. State*, 572 S.W.3d 234, 239 (Tex. Crim. App. 2019) (quoting *Campbell v. State*, 610 S.W.2d 754, 756 (Tex. Crim. App. 1980) (panel op.)); *see also Thompson v. State*, 89 S.W.3d 843, 850 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) ("The law provides for, and presumes, a fair trial free from improper argument by the State."). Proper prosecutorial argument should generally fall within one of the following categories: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answer to argument of opposing counsel; and (4) pleas for law enforcement. *Brown v. State*, 270 S.W.3d 564, 571 (Tex. Crim. App. 2008); *Cantu v. State*, 944 S.W.2d 669, 671 (Tex. App.—Corpus Christi–Edinburg 1997, pet. ref'd). "In examining challenges to jury argument, th[e] Court considers the remark in the context in which it appears. Counsel is allowed wide latitude

13

without limitation in drawing inferences from the evidence so long as the inferences drawn are reasonable, fair, legitimate, and offered in good faith." *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988).

We review a trial court's rulings on objections as to the proper scope of closing arguments for an abuse of discretion. *See Milton*, 572 S.W.3d at 240; *Vasquez v. State*, 484 S.W.3d 526, 531 (Tex. App.—Houston [1st Dist.] 2016, no pet.). A trial court abuses its discretion when it acts without reference to any guiding rules and principles or when it acts arbitrarily or unreasonably. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019) (citing *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)). Therefore, we will uphold a trial court's ruling on admissibility if it is within the "zone of reasonable disagreement." *Inthalangsy v. State*, 634 S.W.3d 749, 754 (Tex. Crim. App. 2021) (quoting *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001)). Further, when analyzing an appellant's argument on appeal, "[w]e generally presume the jury follows the trial court's instructions in the manner presented." *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998) (noting that the presumption is rebuttable).

Improper jury argument generally constitutes non-constitutional error. *See Martinez v. State*, 17 S.W.3d 677, 692 (Tex. Crim. App. 2000) (en banc) ("[M]ost [jury argument] that fall outside the areas of permissible argument will be considered to be error of the non[-]constitutional variety."). A non-constitutional error "that does not affect substantial rights must be disregarded." *Freeman v. State*, 340 S.W.3d 717, 728 (Tex. Crim. App. 2011); *see Brown*, 270 S.W.3d at 570 (concluding that even when the State makes an improper jury argument, it is error to deny a mistrial only if the argument is "extreme or manifestly improper"). A substantial right is affected if the error had a

substantial and injurious effect or influence in determining the jury's verdict. *Cook v. State*, 665 S.W.3d 595, 599 (Tex. Crim. App. 2023).

**B.      Discussion**

As previously noted, it is not entirely clear that the prosecutor's statement that "all that is required is some sort of physical touching" is incorrect as a matter of law. *See Carbajal*, 659 S.W.3d at 180 ("The State is not required to demonstrate any certain threshold of force used to compel the victim's submission, only that the defendant used some force."). At the very least, given the fact that the term "physical force" is left undefined in the statute, the trial court's overruling of Guner's objection was within the zone of reasonable disagreement. *See Inthalangsy*, 634 S.W.3d at 754. For similar reasons, given the non-legally significant phrase "young girl," as opposed to legally significant terms like "minor," we cannot conclude that the trial court acted outside the zone of reasonable disagreement in allowing the prosecutor to refer to Jane, who was eighteen at the time of the offense and twenty-three when she was testifying, as a "young girl." *See Id*.; *Milton*, 572 S.W.3d at 240.

As to Guner's complaints that the prosecutor impermissibly argued a coercion theory of sexual assault to the jury, such a claim is also without merit. First, the prosecutor never said that the jury could convict based solely on a coercion theory. Guner suggests that by referring to certain words in closing argument, such as "control," "intimidation," and "manipulation," the prosecutor impermissibly sought to sway the jury to convict him based on an uncharged coercion theory of sexual assault. Guner provides no authority for the proposition that certain words are off-limits during closing argument simply because they may possibly be associated with an uncharged alternative. *See* TEX. R.

15

APP. P. 38.1(i); *Wolfe v. State*, 509 S.W.3d 325, 343 (Tex. Crim. App. 2017) ("An appellate court has no obligation to construct and compose an appellant's issues, facts, and arguments with appropriate citations to authorities and to the record." (cleaned up)). At the very least, permitting the prosecutor to use words such as "control," "intimidation," and "manipulation," was within the zone of reasonable disagreement given the State's ability to "facilitate the jury in properly analyzing the evidence presented at trial." *Milton*, 572 S.W.3d at 239; *see Inthalangsy*, 634 S.W.3d at 754.

Even if we were to assume an abuse of discretion as to the supposed references to an uncharged alternative,[5] Guner has failed to show how the complained-of statements by the prosecutor had a "substantial and injurious effect or influence" on the jury's verdict. *Cook*, 665 S.W.3d at 599. We must presume that the jury followed its charge and convicted Guner based on the use of "physical force or violence," and not "coercion." *See Colburn*, 966 S.W.2d at 520. The charge instructed the jury that "the statements of counsel made during the course of the trial or during the argument, if not supported by evidence, or statements of law made by counsel[,] if not in harmony with the law as stated to you by the Court in these instructions, are to be wholly disregarded." We must presume that the jury followed this instruction. *See id*. Given the scant support for Guner's contention that the State urged the jury to convict on an uncharged alternative, and in light of the unrebutted presumption that the jury followed the trial court's instructions, we

---

[5] Guner argues that "his substantial rights were violated by the state's improper closing argument that advocated for a conviction based on a legal theory that was not alleged in the indictment." Guner does not similarly claim that his substantial rights were violated by the prosecutor's statements that "force" only requires "some sort of physical touching," and referring to Jane as "young girl." Accordingly, any such argument that those statements violated Guner's substantial rights has been waived. *See* TEX. R. APP. P. 38.1(i); *Wolfe v. State*, 509 S.W.3d 325, 343 (Tex. Crim. App. 2017).

16

conclude that the complained-of statements were not "extreme or manifestly improper," *Brown*, 270 S.W.3d at 570, and did not otherwise have a "substantial and injurious effect or influence" on the jury's verdict. *Cook*, 665 S.W.3d at 599. We overrule Guner's second issue.

## VII.    CONCLUSION

We affirm the trial court's judgment.

L. ARON PEÑA JR.
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
14th day of November, 2024.